1 | PAUL J. ANDRE (State Bar No. 196585)
pandre@kramerlevin.com
2 | LISA KOBIALKA (State Bar No. 191404)
lkobialka@kramerlevin.com
3 | JAMES HANNAH (State Bar No. 237978)
jhannah@kramerlevin.com
4 | KRAMER LEVIN NAFTALIS & FRANKEL LLP
990 Marsh Road
5 | Menlo Park, CA 94025
Telephone: (650) 752-1700
6 | Facsimile: (650) 752-1800

7 | *Attorneys for Defendant*
8 | FINJAN, INC.

ORIGINAL FILED

JUL 08 2013

9

### IN THE UNITED STATES DISTRICT COURT

10

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

### SAN JOSE DIVISION

12

13 | FINJAN, INC., a Delaware Corporation,      Case No.: CV 13-03133 SBA

14 |             Plaintiff,                      **COMPLAINT FOR PATENT
15 |                                             INFRINGEMENT**
       v.
16 | FIREEYE, INC., a Delaware Corporation,

17 |             Defendant.                      **DEMAND FOR JURY TRIAL**

18

19

20

21

22

23

24

25

26

27

28

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Finjan, Inc. ("Finjan") files this Complaint for Patent Infringement and Jury Demand against Defendant FireEye, Inc. ("Defendant" or "FireEye") and alleges as follows:

### THE PARTIES

1. Finjan is a Delaware corporation, with its corporate headquarters at 1313 N. Market Street, Suite 5100, Wilmington, Delaware 19801. Finjan's U.S. operating business was previously headquartered at 2025 Gateway Place, San Jose, California 95110.

2. FireEye is a Delaware corporation with its principal place of business at 1440 McCarthy Blvd., Milpitas, California 95035.

### JURISDICTION AND VENUE

3. This action arises under the Patent Act, 35 U.S.C. § 101 *et seq*. This Court has original jurisdiction over this controversy pursuant to 28 U.S.C. §§ 1331 and 1338.

4. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) and/or 1400(b).

5. This Court has personal jurisdiction over Defendant. Upon information and belief, Defendant does business in this District and has, and continues to, infringe and/or induce the infringement in this District. FireEye also markets its products primarily in and from this District. Currently, FireEye is availing itself of the jurisdiction of Northern California in the *Fortinet, Inc. v. FireEye, Inc.*, 12-cv-01066 (EJD) (PSG), case. In addition, the Court has personal jurisdiction over Defendant because it has established minimum contacts with the forum and the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

### FINJAN'S INNOVATIONS

6. Finjan was founded in 1997 as a wholly-owned subsidiary of Finjan Software Ltd. an Israeli corporation. Finjan was a pioneer in the developing proactive security technologies capable of

1

detecting previously unknown and emerging online security threats recognized today under the umbrella of "malware." These technologies protect networks and endpoints by identifying suspicious patterns and behaviors of content delivered over the internet. Finjan has been awarded, and continues to prosecute, numerous patents in the United States and around the world resulting directly from Finjan's more than decade-long research and development efforts, supported by a dozen inventors.

7.      Finjan built and sold software, including APIs, and appliances for network security using these patented technologies. These products and customers continue to be supported by Finjan's licensing partners. At its height, Finjan employed nearly 150 employees around the world building and selling security products and operating the Malicious Code Research Center through which it frequently published research regarding network security and current threats on the internet. Finjan's pioneering approach to online security drew equity investments from two major software and technology companies, the first in 2005, followed by the second in 2006. Through 2009, Finjan has generated millions of dollars in product sales and related services and support revenues

8.      Finjan's founder and original investors are still involved with and invested in the company today, as are a number of other key executives and advisors. Currently, Finjan is a technology company applying its research, development, knowledge and experience with security technologies to working with inventors, investing in and/or acquiring other technology companies, investing in a variety of research organizations, and evaluating strategic partnerships with large companies.

9.      On October 12, 2004, U.S. Patent No. 6,804,780 ("the '780 Patent"), entitled SYSTEM AND METHOD FOR PROTECTING A COMPUTER AND A NETWORK FROM HOSTILE DOWNLOADABLES, was issued to Shlomo Touboul. A true and correct copy of the '780 Patent is attached to this Complaint as Exhibit A and is incorporated by reference herein.

2

10.     All rights, title, and interest in the '780 Patent have been assigned to Finjan, which is the sole owner of the '780 Patent.  Finjan has been the sole owner of the '780 Patent since its issuance.

11.     The '780 Patent is generally directed towards methods and systems for generating a Downloadable ID.  By generating an identification for each examined Downloadable, the system allows the Downloadable to be recognized without reevaluation.  Such recognition increases efficiency while also saving valuable resources, such as memory and computing power.

12.     On December 13, 2011, U.S. Patent No. 8,079,086 ("the '086 Patent"), entitled MALICIOUS MOBILE CODE RUNTIME MONITORING SYSTEM AND METHODS, was issued to Yigal Mordechai Edery, Nimrod Itzhak Vered, Goosh Tel-Mond, David R Kroll and Shlomo Touboul.  A true and correct copy of the '086 Patent is attached to this Complaint as Exhibit B and is incorporated by reference herein.

13.     All rights, title, and interest in the '086 Patent have been assigned to Finjan, which is the sole owner of the '086 Patent.  Finjan has been the sole owner of the '086 Patent since its issuance.

14.     The '086 Patent is generally directed towards computer networks and more particularly provides a system that protects devices connected to Internet from undesirable operations from web-based content.  One of the ways this is accomplished is by creating a profile of the web-based content and sending these profiles and corresponding web-content to another computer for appropriate action.

15.     On July 5, 2011, U.S. Patent No. 7,975,305 ("the '305 Patent"), entitled METHOD AND SYSTEM FOR ADAPTIVE RULE-BASED CONTENT SCANNERS FOR DESKTOP COMPUTERS, was issued to Moshe Rubin, Moshe Matitya, Artem Melnick, Shlomo Touboul,

3

Alexander Yermakov and Amit Shaked.  A true and correct copy of the '305 Patent is attached to this Complaint as Exhibit C and is incorporated by reference herein.

16. All rights, title, and interest in the '305 Patent have been assigned to Finjan, which is the sole owner of the '305 Patent.  Finjan has been the sole owner of the '305 Patent since its issuance.

17. The '305 Patent is generally directed towards network security and in particular rule-based scanning of web-based content for exploits.  One of the ways this is accomplished is by using parser and analyzer rules to describe computer exploits as patterns of types of tokens.  Additionally, the system provides a way to keep these rules updated.

18. On July 17, 2012, U.S. Patent No. 8,225,408 ("the '408 Patent"), entitled METHOD AND SYSTEM FOR ADAPTIVE RULE-BASED CONTENT SCANNERS, was issued to Moshe Rubin, Moshe Matitya, Artem Melnick, Shlomo Touboul, Alexander Yermakov and Amit Shaked.  A true and correct copy of the '408 Patent is attached to this Complaint as Exhibit D and is incorporated by reference herein.

19. All rights, title, and interest in the '408 Patent have been assigned to Finjan, which is the sole owner of the '408 Patent.  Finjan has been the sole owner of the '408 Patent since its issuance.

20. The '408 Patent is generally directed towards network security and in particular rule-based scanning of web-based content for a variety of exploits written in different programming languages.  One of the ways this is accomplished is by expressing the exploits as patterns of tokens.  Additionally, the system provides a way to analyze these exploits by using a parse tree.

21. On June 6, 2006, U.S. Patent No. 7,058,822 ("the '822 Patent"), entitled MALICIOUS MOBILE CODE RUNTIME MONITORING SYSTEM AND METHODS, was issued to Yigal

4

Mordechai Edery, Nimrod Itzhak Vered and David R. Kroll.  A true and correct copy of the '822 Patent is attached to this Complaint as Exhibit E and is incorporated by reference herein.

22.     All rights, title, and interest in the '822 Patent have been assigned to Finjan, which is the sole owner of the '822 Patent.  Finjan has been the sole owner of the '822 Patent since its issuance.

23.     The '822 Patent is generally directed towards computer networks and more particularly provides a system that protects devices connected to Internet from undesirable operations from web-based content.  One of the ways this is accomplished is by determining whether any part of such web-based content can be executed and then trapping such content and neutralizing possible harmful effects using mobile protection code.  Additionally, the system provides a way to analyze such web-content to determine whether it can be executed.

24.     On June 6, 2010, U.S. Patent No. 7,647,633 ("the '633 Patent"), entitled MALICIOUS MOBILE CODE RUNTIME MONITORING SYSTEM AND METHODS, was issued to Yigal Mordechai Edery, Nimrod Itzhak Vered, David R. Kroll and Shlomo Touboul.  A true and correct copy of the '633 Patent is attached to this Complaint as Exhibit F and is incorporated by reference herein.

25.     All rights, title, and interest in the '633 Patent have been assigned to Finjan, which is the sole owner of the '633 Patent.  Finjan has been the sole owner of the '633 Patent since its issuance.

26.     The '633 Patent is generally directed towards computer networks and more particularly provides a system that protects devices connected to Internet from undesirable operations from web-based content.  One of the ways this is accomplished is by determining whether any part of

such web-based content can be executed and then trapping such content and neutralizing possible harmful effects using mobile protection code.

**FIREEYE**

27.     FireEye makes, uses, sells, offers for sale, and/or imports into the United States and this District products and services that utilize the FireEye Threat Protection Platform.

28.     The FireEye Threat Protection Platform is comprised of the following technologies: Dynamic Threat Intelligence, Central Management System, Malware Analysis System, Web Malware Protection System, File Malware Protection System and Email Malware Protection System.



http://www.fireeye.com/resources/pdfs/fireeye-advanced-threat-protection.pdf at 3 (attached as Exhibit G).

6

COMPLAINT FOR PATENT INFRINGEMENT         CASE NO.

29.     Utilizing these technologies, the FireEye Threat Protection Platform provides real-time, dynamic threat protection without the use of signatures to protect an organization across the primary threat vectors, including Web, email, and files and across the different stages of an attack life cycle.

30.     The FireEye Web Malware Protection System is designed to protect against drive by downloads and blended Web and email attacks.  The FireEye Web Malware Protection System provides real-time, dynamic threat protection by performing two phases of analysis.



FireEye_5DesignPrinciples_wp.pdf at 8 (attached at Exhibit H).

31.     The FireEye Web Malware Protection System's first phase of analysis consists of network-traffic-analysis techniques that rely on methods such as heuristic analysis and pattern recognition to identify suspected malware.  The front-end heuristic analysis engine parses HTML and JavaScript.  The engine detects statistical anomalies in the structure and content of the code.  These

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

1   anomalies are assigned priority rankings, and when the rankings exceed a threshold, the suspicious

2   HTML and/or JavaScript is passed to a Virtual Victim Machine for further analysis.

3       32.     The FireEye Web Malware Protection System's second phase of analysis executes

4   suspected malware in a virtual machine to verify that it is malicious.  The virtual machines run an

5   operating system, multiple browser types, and over thirty different browser plug-ins.  FireEye touts

6   the importance of these features because Web-based attacks frequently exploit vulnerabilities in

7   browser plug-ins such as Adobe Flash and Acrobat and Apple QuickTime.  The FireEye Web

8   Malware Protection System also traces possible malware infections within the virtual victim machine

9   analysis environment.  By using the knowledge of malicious operations in the virtual machine,

10  FireEye advertises the ability to dynamically create exploit signatures from such real time virtual

11  machine analysis.  These dynamically generated signatures are then shared with all appliances

12  connected into FireEye's cloud protection network.

13      33.     Another part of the FireEye Threat Protection Platform is the FireEye Dynamic Threat

14

15  Intelligence.  The FireEye Dynamic Threat Intelligence is a global network that connects FireEye

16  Malware Protection System appliances to provide a real-time exchange of threat data on today's

17  cyber attacks.  Additionally, the FireEye Dynamic Threat Intelligence provides subscriber appliances

18

19  with the latest intelligence on advanced cyber attacks and malware callback destinations, enabling the

20  FireEye appliances to proactively recognize new threats and block attacks.  This intelligence is auto-

21  generated and includes: malware attack profiles (MD5s of malware code, network behaviors,

22  obfuscation tactics) that identify confirmed and now-known attacks; analysis of file share objects,

23

24  email attachments, and URLs; fully qualified malware callback destinations (destination IP address,

25  protocols, ports) used to exfiltrate data and deliver cybercriminal commands; and malware

26

27

28

COMPLAINT FOR PATENT INFRINGEMENT          CASE NO.

communication protocol characteristics, such as custom commands used to instantiate transmission sessions.

34.   The FireEye Threat Protection Platform also includes the FireEye Central Management System.  The FireEye Central Management System consolidates the management, reporting, and data sharing of the FireEye Malware Protection System in a network-based appliance. Additionally, the FireEye Central Management System enables real-time sharing of the auto-generated malware intelligence to identify and block advanced attacks targeting the organization.  It also enables centralized configuration, management, and reporting of FireEye appliances.

35.   FireEye provides detailed instructions to its users regarding all aspects of the FireEye Threat Protection Platform, including the FireEye Web Malware Protection System, the FireEye Dynamic Threat Intelligence and the FireEye Central Management System.  These instructions can be found at http://www.fireeye.com/info-center/.

36.   FireEye also permits third-party developers to access and use the FireEye Threat Protection Platform.  In doing so, FireEye requires third-party developers to agree to terms and conditions that dictate how the developers access and use the FireEye Threat Protection Platform. Third-party developers have access to a variety of services that integrate third party applications and products with the FireEye Threat Protection Platform.

37.   The FireEye Threat Protection Platform includes the FireEye Threat Protection Platform as well as the set of development tools and APIs that are provided to third-party developers. FireEye provides detailed instructions to developers to enable them to integrate with the FireEye Threat Protection Platform to utilize the FireEye Web Malware Protection System.  *See* FireEye-Partner-Brief.pdf (attached as Exhibit I); *see also* EnCase-FireEye-Integration-Onesheet.pdf (attached as Exhibit J).

COMPLAINT FOR PATENT INFRINGEMENT          CASE NO.

## FIREEYE'S INFRIGEMENT OF FINJAN'S PATENTS

38.     Defendant has been and is now infringing the '780 Patent, the '086 Patent, the '408 Patent, the '305 Patent, the '822 Patent and the '633 Patent (collectively "the Patents-In-Suit") in this judicial District, and elsewhere in the United States by, among other things, making, using, and operating the claimed system and methods on the FireEye Threat Protection Platform.  Reference to the FireEye Threat Protection Platform includes FireEye's products, as well as the set of development tools and APIs that FireEye provides to third-party developers.

39.     In addition to directly infringing the Patents-In-Suit pursuant to 35 U.S.C. § 271(a) either literally or under the doctrine of equivalents, Defendant indirectly infringes the Patents-In-Suit pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including its users and developers, to perform all or some of the steps of the method claims, either literally or under the doctrine of equivalents, of the Patents-In-Suit.

**COUNT I**
**(Direct Infringement of the '780 Patent pursuant to 35 U.S.C. § 271(a))**

40.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

41.     Defendant has infringed and continues to infringe claims 1-8 of the '780 Patent in violation of 35 U.S.C. § 271(a).

42.     Defendant's infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

43.     Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization or license of Finjan.

44.     Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including but not limited to

10

COMPLAINT FOR PATENT INFRINGEMENT              CASE NO.

the FireEye Threat Protection Platform, including the FireEye Malware Protection System, which embodies the patented invention of the '780 Patent.

45.    As a result of Defendant's unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

46.    Defendant's infringement of the '780 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

**COUNT II**
**(Indirect Infringement of the '780 Patent pursuant to 35 U.S.C. § 271(b))**

47.    Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

48.    Defendant has induced and continues to induce others to infringe at least claims 1-8 of the '780 Patent under 35 U.S.C. § 271(b).

49.    In addition to directly infringing the '780 Patent, Defendant indirectly infringes the '780 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including but not limited to its customers, users and developers, to perform some of the steps of the method claims, either literally or under the doctrine of equivalents, of the '780 Patent.  Defendant knew or was willfully blind to the fact that it was inducing infringement by practicing in conjunction with others, including users and developers, one or more method claims of the '780 Patent.

50.    Defendant knowingly and actively aided and abetted the direct infringement of the '780 Patent by instructing and encouraging its customers, users and developers to use the FireEye Threat Protection Platform.  Such instructions and encouragement include but are not limited to, advising third parties to use the FireEye Threat Protection Platform in an infringing manner; providing a mechanism through which third parties may infringe the '780 Patent, specifically through

11

COMPLAINT FOR PATENT INFRINGEMENT                CASE NO.

the use of the FireEye Threat Protection Platform; advertising and promoting the use of the FireEye Threat Protection Platform in an infringing manner; and distributing guidelines and instructions to third parties on how to use the FireEye Threat Protection Platform in an infringing manner.

51.     FireEye regularly updates and maintains the FireEye Info Center to provide demonstration, instruction, and technical assistance to users to help them use the FireEye Threat Protection Platform, including:

- Cybersecurity Strategies for Small to Medium-sized Businesses (*see e.g.* http://www2.fireeye.com/WEB2013WPCybersecurityStrategiesforSMB_closing-critical-security-gaps.html (attached as Exhibit K) tells users that "upgrading security defenses is critical.." and to deploy the "industry-leading FireEye platform"),

- 5 Design Principles of Advanced Malware Protection (*see e.g.* http://www2.fireeye.com/wp_5principles_adv_malware.html?x=FE_WEB_IC (attached as Exhibit H) provides instructions to users, including "how to design systems that protect against advanced threats").

- Dynamic Threat Intelligence Cloud Datasheet (*see e.g.* fireeye-dynamic-threat-intelligence-cloud.pdf (attached as Exhibit L) encourages customers to subscribe to the FireEye Dynamic Threat Intelligence Cloud service to receive and share data with FireEye.

52.     FireEye instructs users, including employees, to use and test the FireEye Threat Protection Platform. For example, FireEye provide auto-configured test environments where users can safely execute and inspect advanced malware, zero-day, and targeted APT attacks embedded in common file formats, email attachments, and Web objects. *See* Malware Analysis Tools, Testing, & Protection System.pdf (attached as Exhibit M).

53.     FireEye provides FireEye Visio stencils for the following product families to instruct customers how to use the FireEye Threat Protection Platform. *See* http://www.fireeye.com/products-and-solutions/visio-stencils.html (attached as Exhibit N)

54.     Defendant has had knowledge of the '780 Patent at least as of the time it learned of this action for infringement and by continuing the actions described above has had the specific intent to or was willfully blind to the fact that its actions would induce infringement of the '780 Patent.

12

55.    FireEye actively and intentionally maintains and websites, including FireEye's Info Center, to promote the FireEye Threat Protection Platform and to encourage potential users and developers to use the FireEye Threat Protection Platform in the manner described by Finjan.

56.    FireEye actively updates websites, including FireEye's Info Center, to promote the FireEye Threat Protection Platform, including the FireEye Web Malware Protection System and FireEye Dynamic Threat Intelligence, to encourage customers, users and developers to practice the methods taught in the '780 Patent.

## COUNT III
### (Direct Infringement of the '086 Patent pursuant to 35 U.S.C. § 271(a))

57.    Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

58.    Defendant has infringed and continues to infringe at least claims 1-8, 31-33, 35-36, 39 and 41 of the '086 Patent in violation of 35 U.S.C. § 271(a).

59.    Defendant's infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

60.    Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization or license of Finjan.

61.    Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including but not limited to the FireEye Threat Protection Platform, including the FireEye Malware Protection System and FireEye Dynamic Threat Intelligence, which embody the patented invention of the '086 Patent.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

62.     As a result of Defendant's unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

63.     Defendant's infringement of the '086 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

**COUNT IV**
**(Indirect Infringement of the '086 Patent pursuant to 35 U.S.C. § 271(b))**

64.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

65.     Defendant has induced and continues to induce others to infringe at least claims 1-8, 31-33, 35-36, 39 and 41 of the '086 Patent under 35 U.S.C. § 271(b).

66.     In addition to directly infringing the '086 Patent, Defendant indirectly infringes the '086 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including but not limited to its users and developers, to perform some of the steps of the method claims, either literally or under the doctrine of equivalents, of the '086 Patent.  Defendant knew or was willfully blind to the fact that it was inducing infringement by practicing in conjunction with others, including users and developers, one or more method claims of the '086 Patent.

67.     Defendant knowingly and actively aided and abetted the direct infringement of the '086 Patent by instructing and encouraging its users and developers to use the FireEye Threat Protection Platform.  Such instructions and encouragement include but are not limited to, advising third parties to use the FireEye Threat Protection Platform in an infringing manner; providing a mechanism through which third parties may infringe the '086 Patent, specifically through the use of the FireEye Threat Protection Platform; advertising and promoting the use of the FireEye Threat

COMPLAINT FOR PATENT INFRINGEMENT          CASE NO.

Protection Platform in an infringing manner; and distributing guidelines and instructions to third

parties on how to use the FireEye Threat Protection Platform in an infringing manner.

68. FireEye regularly updates and maintains the FireEye Info Center to provide

demonstration, instruction, and technical assistance to users to help them use the FireEye Threat

Protection Platform, including the following webcasts and webinars:

- Next-Generation Threats: Advanced, Targeted…Successful – How Do You Stop Them? (*see e.g.* http://www2.fireeye.com/how-stop-next-generation-threats.html (attached as Exhibit O) instructing users how to "effectively protect against advanced targeted attacks with the FireEye Malware Protection System"),

- FireEye Malware Protection System Demo (*see e.g.* http://www2.fireeye.com/WEB2013OnDemandDemo_n.html (attached as Exhibit P) instructing users on "how to stop zero-day, advanced targeted attacks, and APTs in an on-demand demo of the FireEye Malware Protection System (MPS).").

69. FireEye regularly updates and maintains the FireEye Products and Solutions website to

encourage customers and users to use the FireEye Threat Protection Platform, including Advanced

Dynamic Threat Intelligence cloud & Intelligence from FireEye (*see e.g.*

http://www.fireeye.com/products-and-solutions/dynamic-threat-intelligence-cloud.html (attached as

Exhibit L).

70. FireEye instructs users, including employees, to use and test the FireEye Threat

Protection Platform. For example, FireEye provide auto-configured test environments where users

can safely execute and inspect advanced malware, zero-day, and targeted APT attacks embedded in

common file formats, email attachments, and Web objects. *See* Malware Analysis Tools, Testing, &

Protection System.pdf (attached as Exhibit M).

71. Defendant has had knowledge of the '086 Patent at least as of the time it learned of

this action for infringement and by continuing the actions described above has had the specific intent

to or was willfully blind to the fact that its actions would induce infringement of the '086 Patent.

72.     FireEye actively and intentionally maintains and websites, including FireEye's Info Center, to promote the FireEye Threat Protection Platform and to encourage potential users and developers to use the FireEye Threat Protection Platform in the manner described by Finjan.

73.     FireEye actively updates websites, including FireEye's Info Center, to promote the FireEye Threat Protection Platform, including the FireEye Web Malware Protection System and FireEye Dynamic Threat Intelligence, to encourage users and developers to practice the methods taught in the '086 Patent.

## COUNT V
### (Direct Infringement of the '305 Patent pursuant to 35 U.S.C. § 271(a))

74.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

75.     Defendant has infringed and continues to infringe at least claims 13-24 of the '305 Patent in violation of 35 U.S.C. § 271(a).

76.     Defendant's infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

77.     Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization or license of Finjan.

78.     Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including but not limited to the FireEye Threat Protection Platform, including the FireEye Malware Protection System, which embodies the patented invention of the '305 Patent.

COMPLAINT FOR PATENT INFRINGEMENT            CASE NO.

79.     As a result of Defendant's unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law. Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

80.     Defendant's infringement of the '305 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

## COUNT VI
### (Indirect Infringement of the '305 Patent pursuant to 35 U.S.C. § 271(b))

81.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

82.     Defendant has induced and continues to induce others to infringe at least claims 13-24 of the '305 Patent under 35 U.S.C. § 271(b).

83.     In addition to directly infringing the '305 Patent, Defendant indirectly infringes the '305 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including but not limited to its users, developers and advertisers, to perform some of the steps of the method claims, either literally or under the doctrine of equivalents, of the '305 Patent. Defendant knew or was willfully blind to the fact that it was inducing infringement by practicing in conjunction with others, including users and developers, one or more method claims of the '305 Patent.

84.     Defendant knowingly and actively aided and abetted the direct infringement of the '305 Patent by instructing and encouraging its users, developers and advertisers to use of the FireEye Threat Protection Platform. Such instructions and encouragement include but are not limited to, advising third parties to use the FireEye Threat Protection Platform in an infringing manner; providing a mechanism through which third parties may infringe the '305 Patent, specifically through the use of the FireEye Threat Protection Platform; advertising and promoting the use of the FireEye

COMPLAINT FOR PATENT INFRINGEMENT                CASE NO.

Threat Protection Platform in an infringing manner; and distributing guidelines and instructions to third parties on how to use the FireEye Threat Protection Platform in an infringing manner.

85.    FireEye regularly updates and maintains the FireEye Info Center to provide demonstration, instruction, and technical assistance to users to help them use the FireEye Threat Protection Platform, including the following webcasts and webinars:

- Lifecycle of a Breach - 6 Steps Toward Better Security (*see e.g.* http://www2.fireeye.com/WEB2013WebcastLifeCycleofaBreach.html (attached as Exhibit Q) instructs users on "six steps towards better security" using the FireEye Threat Protection Platform);

- FireEye Malware Protection System Demo (*see e.g.* http://www2.fireeye.com/WEB2013OnDemandDemo_n.html (attached as Exhibit P); instructing users on "how to stop zero-day, advanced targeted attacks, and APTs in an on-demand demo of the FireEye Malware Protection System (MPS).").

86.    FireEye regularly updates and maintains the FireEye Info Center Videos website (see e.g. http://www.fireeye.com/info-center/videos/ (attached as Exhibit R) to encourage customers and users to partnering with FireEye's Threat Protection Platform.

87.    FireEye regularly updates and maintains the FireEye Products and Solutions website to encourage customers and users to use the FireEye Threat Protection Platform, including Web Malware Protection System (*see e.g.* http://www.fireeye.com/products-and-solutions/web-security.html (attached as Exhibit S).

88.    FireEye instructs users, including employees, to use and test the FireEye Threat Protection Platform.  For example, FireEye provide auto-configured test environments where users can safely execute and inspect advanced malware, zero-day, and targeted APT attacks embedded in common file formats, email attachments, and Web objects.  *See* Malware Analysis Tools, Testing, & Protection System.pdf (attached as Exhibit M).

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

89.     Defendant has had knowledge of the '305 Patent at least as of the time it learned of this action for infringement and by continuing the actions described above has had the specific intent to or was willfully blind to the fact that its actions would induce infringement of the '305 Patent.

90.     FireEye actively and intentionally maintains and websites, including FireEye's Info Center, to promote the FireEye Threat Protection Platform and to encourage potential users, developers and advertisers to use the FireEye Threat Protection Platform in the manner described by Finjan.

91.     FireEye actively updates websites, including FireEye's Info Center, to promote the FireEye Threat Protection Platform, including the FireEye Web Malware Protection System, to encourage users, developers and advertisers to practice the methods taught in the '305 Patent.

### COUNT VII
### (Direct Infringement of the '408 Patent pursuant to 35 U.S.C. § 271(a))

92.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

93.     Defendant has infringed and continues to infringe at least claims 1-8 and 23-28 of the '408 Patent in violation of 35 U.S.C. § 271(a).

94.     Defendant's infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

95.     Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization or license of Finjan.

96.     Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including but not limited to the

19

FireEye Threat Protection Platform, including the FireEye Malware Protection System and FireEye

Dynamic Threat Intelligence, which embody the patented invention of the '408 Patent.

97.     As a result of Defendant's unlawful activities, Finjan has suffered and will continue to

suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, Finjan is entitled

to preliminary and/or permanent injunctive relief.

98.     Finjan is informed and believes that Defendant's infringement of the '408 Patent has

injured and continues to injure Finjan in an amount to be proven at trial.

## COUNT VIII
### (Indirect Infringement of the '408 Patent pursuant to 35 U.S.C. § 271(b))

99.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the

allegations of the preceding paragraphs, as set forth above.

100.     Defendant has induced and continues to induce others to infringe at least claims 1-8

and 23-28 of the '408 Patent under 35 U.S.C. § 271(b).

101.     In addition to directly infringing the '408 Patent, Defendant indirectly infringes the

'408 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including

but not limited to its users and developers, to perform some of the steps of the method claims, either

literally or under the doctrine of equivalents, of the '408 Patent.  Defendant knew or was willfully

blind to the fact that it was inducing infringement by practicing in conjunction with others, including

users and developers, one or more method claims of the '408 Patent.

102.     Defendant knowingly and actively aided and abetted the direct infringement of the

'408 Patent by instructing and encouraging its users and developers to use of the FireEye Threat

Protection Platform.  Such instructions and encouragement include but are not limited to, advising

third parties to use the FireEye Threat Protection Platform in an infringing manner; providing a

mechanism through which third parties may infringe the '408 Patent, specifically through the use of

COMPLAINT FOR PATENT INFRINGEMENT                 CASE NO.

the FireEye Threat Protection Platform; advertising and promoting the use of the FireEye Threat

Protection Platform in an infringing manner; and distributing guidelines and instructions to third

parties on how to use the FireEye Threat Protection Platform in an infringing manner.

103.    FireEye regularly updates and maintains the FireEye Info Center to provide

demonstration, instruction, and technical assistance to users to help them use the FireEye Threat

Protection Platform, including the following webcasts and webinars:

- Lifecycle of a Breach - 6 Steps Toward Better Security (*see e.g.* http://www2.fireeye.com/WEB2013WebcastLifeCycleofaBreach.html (attached as Exhibit Q) instructs users on "six steps towards better security" using the FireEye Threat Protection Platform);

- FireEye Malware Protection System Demo (*see e.g.* http://www2.fireeye.com/WEB2013OnDemandDemo_n.html (attached as Exhibit P); instructing users on "how to stop zero-day, advanced targeted attacks, and APTs in an on-demand demo of the FireEye Malware Protection System (MPS).").

104.    FireEye regularly updates and maintains the FireEye Products and Solutions website to

encourage customers and user to user the FireEye Threat Protection Platform, including Advanced

Dynamic Threat Intelligence cloud & Intelligence from FireEye (*see e.g.*

http://www.fireeye.com/products-and-solutions/dynamic-threat-intelligence-cloud.html (attached as

Exhibit T). FireEye regularly updates and maintains the FireEye Info Center Videos website (*see e.g.*

http://www.fireeye.com/info-center/videos/ (attached as Exhibit R) to encourage customers and users

to partnering with FireEye's Threat Protection Platform.

105.    FireEye regularly updates and maintains the FireEye Products and Solutions website to

encourage customers and users to use the FireEye Threat Protection Platform, including Web

Malware Protection System (*see e.g.* http://www.fireeye.com/products-and-solutions/web-

security.html (attached as Exhibit U).

106.    FireEye instructs users, including employees, to use and test the FireEye Threat

Protection Platform. For example, FireEye provide auto-configured test environments where users

21

can safely execute and inspect advanced malware, zero-day, and targeted APT attacks embedded in common file formats, email attachments, and Web objects. *See* <u>Malware Analysis Tools, Testing, & Protection System.pdf</u> (attached as Exhibit M).

107.    Defendant has had knowledge of the '408 Patent at least as of the time it learned of this action for infringement and by continuing the actions described above has had the specific intent to or was willfully blind to the fact that its actions would induce infringement of the '408 Patent.

108.    FireEye actively and intentionally maintains and websites, including FireEye's Info Center, to promote the FireEye Threat Protection Platform and to encourage potential users and developers to use the FireEye Threat Protection Platform in the manner described by Finjan.

109.    FireEye actively updates websites, including FireEye's Info Center, to promote the FireEye Threat Protection Platform, including the FireEye Web Malware Protection System, to encourage users and developers to practice the methods taught in the '408 Patent.

## COUNT IX
### (Direct Infringement of the '822 Patent pursuant to 35 U.S.C. § 271(a))

110.    Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

111.    Defendant has infringed and continues to infringe at least claims 1-3 of the '822 Patent in violation of 35 U.S.C. § 271(a).

112.    Defendant's infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

113.    Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization or license of Finjan.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

114. Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including but not limited to the FireEye Threat Protection Platform, including the FireEye Malware Protection System, FireEye Dynamic Threat Intelligence and FireEye Central Management System, which embody the patented invention of the '822 Patent.

115. As a result of Defendant's unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law. Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

116. Defendant's infringement of the '822 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

## COUNT X
### (Indirect Infringement of the '822 Patent pursuant to 35 U.S.C. § 271(b))

117. Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

118. Defendant has induced and continues to induce others to infringe at least claims 1-3 of the '822 Patent under 35 U.S.C. § 271(b).

119. In addition to directly infringing the '822 Patent, Defendant indirectly infringes the '822 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including but not limited to its users and developers, to perform some of the steps of the method claims, either literally or under the doctrine of equivalents, of the '822 Patent. Defendant knew or was willfully blind to the fact that it was inducing infringement by practicing in conjunction with others, including users and developers, one or more method claims of the '822 Patent.

120. Defendant knowingly and actively aided and abetted the direct infringement of the '822 Patent by instructing and encouraging its users and developers to use the FireEye Threat

COMPLAINT FOR PATENT INFRINGEMENT          CASE NO.

1  Protection Platform.  Such instructions and encouragement include but are not limited to, advising

2  third parties to use the FireEye Threat Protection Platform in an infringing manner; providing a

3  mechanism through which third parties may infringe the '822 Patent, specifically through the use of

4  the FireEye Threat Protection Platform; advertising and promoting the use of the FireEye Threat

5  Protection Platform in an infringing manner; and distributing guidelines and instructions to third

6  parties on how to use the FireEye Threat Protection Platform in an infringing manner.

7
8       121.    FireEye regularly updates and maintains the FireEye Info Center to provide

9  demonstration, instruction, and technical assistance to users to help them use the FireEye Threat

10  Protection Platform, including the following webcasts and webinars:

11    •   Cybersecurity Strategies for Small to Medium-sized Businesses (see e.g.
          http://www2.fireeye.com/WEB2013WPCybersecurityStrategiesforSMB_closing-critical-
12        security-gaps.html (attached as Exhibit V) tells users that "upgrading security defenses is
13        critical.." and to deploy the "industry-leading FireEye platform");

14    •   5 Design Principles of Advanced Malware Protection (see e.g.
          http://www2.fireeye.com/wp_5principles_adv_malware.html?x=FE_WEB_IC (attached as
15        Exhibit W)  provides instructions to users, including "how to design systems that protect
          against advanced threats");
16
17    •   FireEye encourages users to use the FireEye Threat Protection Platform.  For example, Digital
          Forensics and Incident Response - Why You Need Them Both (see e.g.
18        http://www2.fireeye.com/WEB2013WebcastDigitalForensicsandIR.html (attached as Exhibit
          X) encourages users to use both the Digital Forensics and Incident Response features of the
19        FireEye Threat Protection Platform).

20      122.    FireEye regularly updates and maintains the FireEye Products and Solutions website to

21  encourage customers and users to use the FireEye Threat Protection Platform, including Advanced

22  Dynamic Threat Intelligence cloud & Intelligence from FireEye (see e.g.

23
24  http://www.fireeye.com/products-and-solutions/dynamic-threat-intelligence-cloud.html (attached as

25  Exhibit T); FireEye Web Malware Protection System (see e.g. http://www.fireeye.com/products-and-

26  solutions/web-security.html (attached as Exhibit U); and FireEye Central Management System (see

27
28

24

*e.g.* http://www.fireeye.com/products-and-solutions/central-management-system.html (attached as Exhibit Y)).

123.    FireEye instructs users, including employees, to use and test the FireEye Threat Protection Platform.  For example, FireEye provide auto-configured test environments where users can safely execute and inspect advanced malware, zero-day, and targeted APT attacks embedded in common file formats, email attachments, and Web objects. *See* Malware Analysis Tools, Testing, & Protection System.pdf (attached as Exhibit M).

124.    Defendant has had knowledge of the '822 Patent at least as of the time it learned of this action for infringement and by continuing the actions described above has had the specific intent to or was willfully blind to the fact that its actions would induce infringement of the '822 Patent.

125.    FireEye actively and intentionally maintains and websites, including FireEye's Info Center, to promote the FireEye Threat Protection Platform and to encourage potential users and developers to use the FireEye Threat Protection Platform in the manner described by Finjan.

126.    FireEye actively updates websites, including FireEye's Info Center, to promote the FireEye Threat Protection Platform, including the FireEye Web Malware Protection System, FireEye Dynamic Threat Intelligence and FireEye Central Management System, to encourage users and developers to practice the methods taught in the '822 Patent.

## COUNT XI
### (Direct Infringement of the '633 Patent pursuant to 35 U.S.C. § 271(a))

127.    Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

128.    Defendant has infringed and continues to infringe at least claims 1-7 of the '633 Patent in violation of 35 U.S.C. § 271(a).

25

COMPLAINT FOR PATENT INFRINGEMENT          CASE NO.

129.    Defendant's infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

130.    Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization or license of Finjan.

131.    Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including but not limited to the FireEye Threat Protection Platform, including the FireEye Malware Protection System, FireEye Dynamic Threat Intelligence and FireEye Central Management System, which embody the patented invention of the '633 Patent.

132.    As a result of Defendant's unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

133.    Finjan is informed and believes that Defendant's infringement of the '633 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

**COUNT XII**
**(Indirect Infringement of the '633 Patent pursuant to 35 U.S.C. § 271(b))**

134.    Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

135.    Defendant has induced and continues to induce others to infringe at least claims 1-7 of the '633 Patent under 35 U.S.C. § 271(b).

136.    In addition to directly infringing the '633 Patent, Defendant indirectly infringes the '633 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including but not limited to its users and developers, to perform some of the steps of the method claims, either

26

COMPLAINT FOR PATENT INFRINGEMENT              CASE NO.

1   literally or under the doctrine of equivalents, of the '633 Patent. Defendant knew or was willfully

2   blind to the fact that it was inducing infringement by practicing in conjunction with others, including

3   users and developers, one or more method claims of the '633 Patent.

4       137.    Defendant knowingly and actively aided and abetted the direct infringement of the

5   '633 Patent by instructing and encouraging its users and developers to use the FireEye Threat

6   Protection Platform. Such instructions and encouragement include but are not limited to, advising

7   third parties to use the FireEye Threat Protection Platform in an infringing manner; providing a

8
    mechanism through which third parties may infringe the '633 Patent, specifically through the use of
9

10  the FireEye Threat Protection Platform; advertising and promoting the use of the FireEye Threat

11  Protection Platform in an infringing manner; and distributing guidelines and instructions to third

12  parties on how to use the FireEye Threat Protection Platform in an infringing manner.

13      138.    FireEye regularly updates and maintains the FireEye Info Center to provide

14  demonstration, instruction, and technical assistance to users to help them use the FireEye Threat

15
    Protection Platform, including the following webcasts and webinars:
16

17      •   Cybersecurity Strategies for Small to Medium-sized Businesses (*see e.g.*
            http://www2.fireeye.com/WEB2013WPCybersecurityStrategiesforSMB_closing-critical-
18          security-gaps.html (attached as Exhibit V) tells users that "upgrading security defenses is
            critical.." and to deploy the "industry-leading FireEye platform");
19

20      •   5 Design Principles of Advanced Malware Protection (*see e.g.*
            http://www2.fireeye.com/wp_5principles_adv_malware.html?x=FE_WEB_IC (attached as
21          Exhibit W) provides instructions to users, including "how to design systems that protect
            against advanced threats");
22

23      •   FireEye encourages users to use the FireEye Threat Protection Platform. For example, Digital
            Forensics and Incident Response - Why You Need Them Both (*see e.g.*
24          http://www2.fireeye.com/WEB2013WebcastDigitalForensicsandIR.html (attached as Exhibit
            X) encourages users to use both the Digital Forensics and Incident Response features of the
25          FireEye Threat Protection Platform).

26      139.    FireEye regularly updates and maintains the FireEye Products and Solutions website to

27  encourage customers and users to use the FireEye Threat Protection Platform, including Advanced

28
                                                27

COMPLAINT FOR PATENT INFRINGEMENT          CASE NO.

Dynamic Threat Intelligence cloud & Intelligence from FireEye (*see e.g.*

http://www.fireeye.com/products-and-solutions/dynamic-threat-intelligence-cloud.html (attached as

Exhibit T); FireEye Web Malware Protection System (*see e.g.* http://www.fireeye.com/products-and-

solutions/web-security.html (attached as Exhibit U); and FireEye Central Management System (*see*

*e.g.* http://www.fireeye.com/products-and-solutions/central-management-system.html (attached as

Exhibit Y).

140.    FireEye instructs users, including employees, to use and test the FireEye Threat

Protection Platform.  For example, FireEye provide auto-configured test environments where users

can safely execute and inspect advanced malware, zero-day, and targeted APT attacks embedded in

common file formats, email attachments, and Web objects. *See* Malware Analysis Tools, Testing, &

Protection System.pdf (attached as Exhibit M).

141.    Defendant has had knowledge of the '633 Patent at least as of the time it learned of

this action for infringement and by continuing the actions described above has had the specific intent

to or was willfully blind to the fact that its actions would induce infringement of the '633 Patent.

142.    FireEye actively and intentionally maintains and websites, including FireEye's Info

Center, to promote the FireEye Threat Protection Platform and to encourage potential users and

developers to use the FireEye Threat Protection Platform in the manner described by Finjan.

143.    FireEye actively updates websites, including FireEye's Info Center, to promote the

FireEye Threat Protection Platform, including the FireEye Web Malware Protection System, FireEye

Dynamic Threat Intelligence and FireEye Central Management System, to encourage users and

developers to practice the methods taught in the '633 Patent.

///

///

COMPLAINT FOR PATENT INFRINGEMENT          CASE NO.

## PRAYER FOR RELIEF

WHEREFORE, Finjan prays for judgment and relief as follows:

A.    An entry of judgment holding Defendant has infringed, is infringing, and has induced infringement of the '780 Patent, the '086 Patent, the '408 Patent, the '305 Patent, the '822 Patent and the '633 Patent.

B.    A preliminary and permanent injunction against Defendant and its officers, employees, agents, servants, attorneys, instrumentalities, and/or those in privity with them, from infringing, or inducing the infringement of the '780 Patent, the '086 Patent, the '408 Patent, the '305 Patent, the '822 Patent and the '633 Patent, and for all further and proper injunctive relief pursuant to 35 U.S.C. § 283;

C.    An award to Finjan of such damages as it shall prove at trial against Defendant that is adequate to fully compensate Finjan for Defendant's infringement of the 780 Patent, the '086 Patent, the '408 Patent, the '305 Patent, the '822 Patent and the '633 Patent said damages to be no less than a reasonable royalty;

D.    A finding that this case is "exceptional" and an award to Finjan of its costs and reasonable attorney's fees, as provided by 35 U.S.C. § 285.

E.    An accounting of all infringing sales and revenues; and

F.    Such further and other relief as the Court may deem proper and just.

///

///

///

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

Respectfully submitted,

Dated: July 8, 2013                        By: _____

Paul J. Andre
Lisa Kobialka
James Hannah
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 752-1700
Facsimile: (650) 752-1800
pandre@kramerlevin.com
lkobialka@kramerlevin.com
jhannah@kramerlevin.com

*Attorneys for Plaintiff*
FINJAN, INC.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

## DEMAND FOR JURY TRIAL

Finjan demands a jury trial on all issues so triable.

Respectfully submitted,

Dated: July 8, 2013                    By: _____

Paul J. Andre
Lisa Kobialka
James Hannah
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 752-1700
Facsimile: (650) 752-1800
pandre@kramerlevin.com
lkobialka@kramerlevin.com
jhannah@kramerlevin.com

*Attorneys for Plaintiff*
FINJAN, INC.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.