PAUL J. ANDRE (State Bar No. 196585)
pandre@kramerlevin.com
LISA KOBIALKA (State Bar No. 191404)
lkobialka@kramerlevin.com
JAMES HANNAH (State Bar No. 237978)
jhannah@kramerlevin.com
KRAMER LEVIN NAFTALIS & FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 752-1700
Facsimile: (650) 752-1800

*Attorneys for Defendant*
FINJAN, INC.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation, <br><br>    Plaintiff, <br><br>    v. <br><br> FIREEYE, INC., a Delaware Corporation, <br><br>    Defendant. | Case No.: CV 13-03133-SBA <br><br> **FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT** <br><br> **DEMAND FOR JURY TRIAL** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Finjan, Inc. ("Finjan") files this First Amended Complaint for Patent Infringement and Jury Demand against Defendant FireEye, Inc. ("Defendant" or "FireEye") and alleges as follows:

## THE PARTIES

1.      Finjan is a Delaware corporation, with its corporate headquarters at 1313 N. Market Street, Suite 5100, Wilmington, Delaware 19801.  Finjan's U.S. operating business was previously headquartered at 2025 Gateway Place, San Jose, California 95110.

2.      FireEye is a Delaware corporation with its principal place of business at 1440 McCarthy Blvd., Milpitas, California 95035.

## JURISDICTION AND VENUE

3.      This action arises under the Patent Act, 35 U.S.C. § 101 *et seq*.  This Court has original jurisdiction over this controversy pursuant to 28 U.S.C. §§ 1331 and 1338.

4.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) and/or 1400(b).

5.      This Court has personal jurisdiction over Defendant.  Upon information and belief, Defendant does business in this District and has, and continues to, infringe and/or induce the infringement in this District.  FireEye also markets its products primarily in and from this District.  Currently, FireEye is availing itself of the jurisdiction of Northern California in the *Fortinet, Inc. v. FireEye, Inc.*, 5:13-cv-2496 (EJD) (PSG), case.  In addition, the Court has personal jurisdiction over Defendant because it has established minimum contacts with the forum and the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

## FINJAN'S INNOVATIONS

6.      Finjan was founded in 1997 as a wholly-owned subsidiary of Finjan Software Ltd., an Israeli corporation.  Finjan was a pioneer in the developing proactive security technologies capable of

1

detecting previously unknown and emerging online security threats recognized today under the umbrella of "malware."  These technologies protect networks and endpoints by identifying suspicious patterns and behaviors of content delivered over the Internet.  Finjan has been awarded, and continues to prosecute, numerous patents in the United States and around the world resulting directly from Finjan's more than decade-long research and development efforts, supported by a dozen inventors.

7.     Finjan built and sold software, including APIs, and appliances for network security using these patented technologies.  These products and customers continue to be supported by Finjan's licensing partners.  At its height, Finjan employed nearly 150 employees around the world building and selling security products and operating the Malicious Code Research Center through which it frequently published research regarding network security and current threats on the Internet. Finjan's pioneering approach to online security drew equity investments from two major software and technology companies, the first in 2005, followed by the second in 2006.  Through 2009, Finjan has generated millions of dollars in product sales and related services and support revenues.

8.     Finjan's founder and original investors are still involved with and invested in the company today, as are a number of other key executives and advisors.  Currently, Finjan is a technology company applying its research, development, knowledge and experience with security technologies to working with inventors, investing in and/or acquiring other technology companies, investing in a variety of research organizations, and evaluating strategic partnerships with large companies.

9.     On October 12, 2004, U.S. Patent No. 6,804,780 ("the '780 Patent"), entitled SYSTEM AND METHOD FOR PROTECTING A COMPUTER AND A NETWORK FROM HOSTILE DOWNLOADABLES, was issued to Shlomo Touboul.  A true and correct copy of the '780 Patent is attached to this Complaint as Exhibit A and is incorporated by reference herein.

FIRST AMENDED COMPLAINT
FOR PATENT INFRINGEMENT

CASE NO. CV 13-03133-SBA

10.     All rights, title, and interest in the '780 Patent have been assigned to Finjan, which is the sole owner of the '780 Patent.  Finjan has been the sole owner of the '780 Patent since its issuance.

11.     The '780 Patent is generally directed towards methods and systems for generating a Downloadable ID.  By generating an identification for each examined Downloadable, the system allows the Downloadable to be recognized without reevaluation.  Such recognition increases efficiency while also saving valuable resources, such as memory and computing power.

12.     On December 13, 2011, U.S. Patent No. 8,079,086 ("the '086 Patent"), entitled MALICIOUS MOBILE CODE RUNTIME MONITORING SYSTEM AND METHODS, was issued to Yigal Mordechai Edery, Nimrod Itzhak Vered, David R Kroll and Shlomo Touboul.  A true and correct copy of the '086 Patent is attached to this Complaint as Exhibit B and is incorporated by reference herein.

13.     All rights, title, and interest in the '086 Patent have been assigned to Finjan, which is the sole owner of the '086 Patent.  Finjan has been the sole owner of the '086 Patent since its issuance.

14.     The '086 Patent is generally directed towards computer networks and, more particularly, provides a system that protects devices connected to the Internet from undesirable operations from web-based content.  One of the ways this is accomplished is by creating a profile of the web-based content and sending these profiles and corresponding web-content to another computer for appropriate action.

15.     On July 5, 2011, U.S. Patent No. 7,975,305 ("the '305 Patent"), entitled METHOD AND SYSTEM FOR ADAPTIVE RULE-BASED CONTENT SCANNERS FOR DESKTOP COMPUTERS, was issued to Moshe Rubin, Moshe Matitya, Artem Melnick, Shlomo Touboul,

3

Alexander Yermakov and Amit Shaked.  A true and correct copy of the '305 Patent is attached to this Complaint as Exhibit C and is incorporated by reference herein.

16.     All rights, title, and interest in the '305 Patent have been assigned to Finjan, which is the sole owner of the '305 Patent.  Finjan has been the sole owner of the '305 Patent since its issuance.

17.     The '305 Patent is generally directed towards network security and, in particular, rule-based scanning of web-based content for exploits.  One of the ways this is accomplished is by using parser and analyzer rules to describe computer exploits as patterns of types of tokens.  Additionally, the system provides a way to keep these rules updated.

18.     On July 17, 2012, U.S. Patent No. 8,225,408 ("the '408 Patent"), entitled METHOD AND SYSTEM FOR ADAPTIVE RULE-BASED CONTENT SCANNERS, was issued to Moshe Rubin, Moshe Matitya, Artem Melnick, Shlomo Touboul, Alexander Yermakov and Amit Shaked.  A true and correct copy of the '408 Patent is attached to this Complaint as Exhibit D and is incorporated by reference herein.

19.     All rights, title, and interest in the '408 Patent have been assigned to Finjan, which is the sole owner of the '408 Patent.  Finjan has been the sole owner of the '408 Patent since its issuance.

20.     The '408 Patent is generally directed towards network security and, in particular, rule-based scanning of web-based content for a variety of exploits written in different programming languages.  One of the ways this is accomplished is by expressing the exploits as patterns of tokens.  Additionally, the system provides a way to analyze these exploits by using a parse tree.

21.     On June 6, 2006, U.S. Patent No. 7,058,822 ("the '822 Patent"), entitled MALICIOUS MOBILE CODE RUNTIME MONITORING SYSTEM AND METHODS, was issued to Yigal

FIRST AMENDED COMPLAINT                                    CASE NO. CV 13-03133-SBA
FOR PATENT INFRINGEMENT

Mordechai Edery, Nimrod Itzhak Vered, David R. Kroll and Shlomo Touboul.  A true and correct copy of the '822 Patent is attached to this Complaint as Exhibit E and is incorporated by reference herein.

22.     All rights, title, and interest in the '822 Patent have been assigned to Finjan, which is the sole owner of the '822 Patent.  Finjan has been the sole owner of the '822 Patent since its issuance.

23.     The '822 Patent is generally directed towards computer networks and, more particularly, provides a system that protects devices connected to the Internet from undesirable operations from web-based content.  One of the ways this is accomplished is by determining whether any part of such web-based content can be executed and then trapping such content and neutralizing possible harmful effects using mobile protection code.  Additionally, the system provides a way to analyze such web-content to determine whether it can be executed.

24.     On January 12, 2010, U.S. Patent No. 7,647,633 ("the '633 Patent"), entitled MALICIOUS MOBILE CODE RUNTIME MONITORING SYSTEM AND METHODS, was issued to Yigal Mordechai Edery, Nimrod Itzhak Vered, David R. Kroll and Shlomo Touboul.  A true and correct copy of the '633 Patent is attached to this Complaint as Exhibit F and is incorporated by reference herein.

25.     All rights, title, and interest in the '633 Patent have been assigned to Finjan, which is the sole owner of the '633 Patent.  Finjan has been the sole owner of the '633 Patent since its issuance.

26.     The '633 Patent is generally directed towards computer networks and, more particularly, provides a system that protects devices connected to the Internet from undesirable operations from web-based content.  One of the ways this is accomplished is by determining whether

5

any part of such web-based content can be executed and then trapping such content and neutralizing possible harmful effects using mobile protection code.

27.     On November 28, 2000, U.S. Patent No. 6,154,844 ("the '844 Patent"), entitled SYSTEM AND METHOD FOR ATTACHING A DOWNLOADABLE SECURITY PROFILE TO A DOWNLOADABLE, was issued to Shlomo Touboul and Nachshon Gal.  A true and correct copy of the '844 Patent is attached to this Complaint as Exhibit G and is incorporated by reference herein.

28.     All rights, title, and interest in the '844 Patent have been assigned to Finjan, which is the sole owner of the '844 Patent.  Finjan has been the sole owner of the '844 Patent since its issuance.

29.     The '844 Patent is generally directed towards computer networks and, more particularly, provides a system that protects devices connected to the Internet from undesirable operations from web-based content.  One of the ways this is accomplished is by linking a security profile to such web-based content to facilitate the protection of computers and networks from malicious web-based content.

**FIREEYE**

30.     FireEye makes, uses, sells, offers for sale, and/or imports into the United States and this District products and services that utilize the FireEye Threat Protection Platform, including but not limited to, Web MPS 1310, Web MPS 2310, Web MPS 4310, Web MPS 4320, Web MPS 7300, Web MPS 7320, Email MPS 3300, Email MPS 5300, Email MPS 8300, Email MPS 8320, CMS 4310, CMS 7300 and FireEye Dynamic Threat Intelligence Cloud.

31.     The FireEye Threat Protection Platform is comprised of the following technologies: Dynamic Threat Intelligence, Central Management System, Malware Analysis System, Web Malware Protection System, File Malware Protection System and Email Malware Protection System.

1
2
3
4
5
6
7
8
9
10
11
12
13
14



http://www.fireeye.com/resources/pdfs/fireeye-advanced-threat-protection.pdf at 3 (attached as

Exhibit H).

32.     Utilizing these technologies, the FireEye Threat Protection Platform provides real-

time, dynamic threat protection without the use of signatures to protect an organization across the

primary threat vectors, including Web, email, and files and across the different stages of an attack life

cycle.

33.     The FireEye Web Malware Protection System is designed to protect against drive by

downloads and blended Web and email attacks.  The FireEye Web Malware Protection System

provides real-time, dynamic threat protection by performing two phases of analysis, as shown below:

FIRST AMENDED COMPLAINT                          CASE NO. CV 13-03133-SBA
FOR PATENT INFRINGEMENT

FireEye technology works inbound and outbound to block multi-phase attacks

*See* FireEye_5DesignPrinciples_wp.pdf at 8 (attached at Exhibit I).

34.      The FireEye Web Malware Protection System's first phase of analysis consists of network-traffic-analysis techniques that rely on methods such as heuristic analysis and pattern recognition to identify suspected malware.  The front-end heuristic analysis engine parses HTML and JavaScript.  The engine detects statistical anomalies in the structure and content of the code.  These anomalies are assigned priority rankings, and when the rankings exceed a threshold, the suspicious HTML and/or JavaScript is passed to a Virtual Victim Machine for further analysis.

35.      The FireEye Web Malware Protection System's second phase of analysis executes suspected malware in a virtual machine to verify that it is malicious.  The virtual machines run an operating system, multiple browser types, and over thirty different browser plug-ins.  FireEye touts the importance of these features because Web-based attacks frequently exploit vulnerabilities in browser plug-ins such as Adobe Flash and Acrobat and Apple QuickTime.  The FireEye Web Malware Protection System also traces possible malware infections within the virtual victim machine

FIRST AMENDED COMPLAINT
FOR PATENT INFRINGEMENT

CASE NO. CV 13-03133-SBA

analysis environment.  By using the knowledge of malicious operations in the virtual machine,

FireEye advertises the ability to dynamically create exploit signatures from such real time virtual

machine analysis.  These dynamically generated signatures are then shared with all appliances

connected into FireEye's cloud protection network.

36.    Another part of the FireEye Threat Protection Platform is the FireEye Dynamic Threat

Intelligence.  The FireEye Dynamic Threat Intelligence is a global network that connects FireEye

Malware Protection System appliances to provide a real-time exchange of threat data on today's

cyber attacks.  Additionally, the FireEye Dynamic Threat Intelligence provides subscriber appliances

with the latest intelligence on advanced cyber attacks and malware callback destinations, enabling the

FireEye appliances to proactively recognize new threats and block attacks.  This intelligence is auto-

generated and includes: malware attack profiles (MD5s of malware code, network behaviors,

obfuscation tactics) that identify confirmed and now-known attacks; analysis of file share objects,

email attachments, and URLs; fully qualified malware callback destinations (destination IP address,

protocols, ports) used to exfiltrate data and deliver cybercriminal commands; and malware

communication protocol characteristics, such as custom commands used to instantiate transmission

sessions.

37.    The FireEye Threat Protection Platform also includes the FireEye Central

Management System.  The FireEye Central Management System consolidates the management,

reporting, and data sharing of the FireEye Malware Protection System in a network-based appliance.

Additionally, the FireEye Central Management System enables real-time sharing of the auto-

generated malware intelligence to identify and block advanced attacks targeting the organization.  It

also enables centralized configuration, management, and reporting of FireEye appliances.

FIRST AMENDED COMPLAINT                                    CASE NO. CV 13-03133-SBA
FOR PATENT INFRINGEMENT

38.     FireEye provides detailed instructions to its users regarding all aspects of the FireEye Threat Protection Platform, including the FireEye Web Malware Protection System, the FireEye Dynamic Threat Intelligence and the FireEye Central Management System.  These instructions can be found at http://www.fireeye.com/info-center/.

39.     FireEye also permits third-party developers to access and use the FireEye Threat Protection Platform.  In doing so, FireEye requires third-party developers to agree to terms and conditions that dictate how the developers access and use the FireEye Threat Protection Platform.  Third-party developers have access to a variety of services that integrate third party applications and products with the FireEye Threat Protection Platform.

40.     The FireEye Threat Protection Platform includes the FireEye Threat Protection Platform, as well as the set of development tools and APIs that are provided to third-party developers.  FireEye provides detailed instructions to developers to enable them to integrate with the FireEye Threat Protection Platform to utilize the FireEye Web Malware Protection System.  *See* FireEye-Partner-Brief.pdf (attached as Exhibit J); *see also* EnCase-FireEye-Integration-Onesheet.pdf (attached as Exhibit K).

**FIREEYE'S INFRIGEMENT OF FINJAN'S PATENTS**

41.     Defendant has been and is now infringing the '780 Patent, the '086 Patent, the '408 Patent, the '305 Patent, the '822 Patent, the '633 Patent and the '844 Patent (collectively "the Patents-In-Suit") in this judicial District, and elsewhere in the United States by, among other things, making, using, importing, selling, and/or offering for sale the claimed system and methods on the FireEye Threat Protection Platform.  Reference to the FireEye Threat Protection Platform includes FireEye's products, as well as the set of development tools and APIs that FireEye provides to third-party developers.

FIRST AMENDED COMPLAINT
FOR PATENT INFRINGEMENT

CASE NO. CV 13-03133-SBA

42.     In addition to directly infringing the Patents-In-Suit pursuant to 35 U.S.C. § 271(a) either literally or under the doctrine of equivalents, Defendant indirectly infringes the Patents-In-Suit pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including its users and developers, to perform all or some of the steps of the method claims, either literally or under the doctrine of equivalents, of the Patents-In-Suit.

## COUNT I
### (Direct Infringement of the '780 Patent pursuant to 35 U.S.C. § 271(a))

43.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

44.     Defendant has infringed and continues to infringe one or more claims of the '780 Patent in violation of 35 U.S.C. § 271(a).

45.     Defendant's infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

46.     Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization or license of Finjan.

47.     Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including but not limited to the FireEye Threat Protection Platform, including the FireEye Malware Protection System, which embodies the patented invention of the '780 Patent.

48.     As a result of Defendant's unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

49.     Defendant's infringement of the '780 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

11

## COUNT II
### (Indirect Infringement of the '780 Patent pursuant to 35 U.S.C. § 271(b))

50.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

51.     Defendant has induced and continues to induce infringement of at least claims 1-8 and 16 of the '780 Patent under 35 U.S.C. § 271(b).

52.     In addition to directly infringing the '780 Patent, Defendant indirectly infringes the '780 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including but not limited to its customers, users and developers, to perform some of the steps of the method claims, either literally or under the doctrine of equivalents, of the '780 Patent, where all the steps of the method claims are performed by either FireEye or its customers, users or developers, or some combination thereof.  Defendant knew or was willfully blind to the fact that it was inducing others, including customers, users and developers, to infringe by practicing, either themselves or in conjunction with Defendant, one or more method claims of the '780 Patent.

53.     Defendant knowingly and actively aided and abetted the direct infringement of the '780 Patent by instructing and encouraging its customers, users and developers to use the FireEye Threat Protection Platform.  Such instructions and encouragement include but are not limited to, advising third parties to use the FireEye Threat Protection Platform in an infringing manner, providing a mechanism through which third parties may infringe the '780 Patent, specifically through the use of the FireEye Threat Protection Platform; advertising and promoting the use of the FireEye Threat Protection Platform in an infringing manner, and distributing guidelines and instructions to third parties on how to use the FireEye Threat Protection Platform in an infringing manner.

FIRST AMENDED COMPLAINT
FOR PATENT INFRINGEMENT

CASE NO. CV 13-03133-SBA

54.     FireEye regularly updates and maintains the FireEye Info Center to provide

demonstration, instruction, and technical assistance to users to help them use the FireEye Threat

Protection Platform, including:

- Cybersecurity Strategies for Small to Medium-sized Businesses (*see e.g.* FireEye_Cybersecurity_Strategies.pdf at 5, available at http://www2.fireeye.com/WEB2013WPCybersecurityStrategiesforSMB_closing-critical-security-gaps.html (attached as Exhibit L) tells users that "[u]pgrading security defenses is critical…" and to deploy the "industry-leading FireEye platform");

- 5 Design Principles for Advanced Malware Protection (*see e.g.* http://www2.fireeye.com/wp_5principles_adv_malware.html?x=FE_WEB_IC (attached as Exhibit M) provides instructions to users, providing "design principles for advanced malware protection");

- Dynamic Threat Intelligence Cloud Datasheet (*see e.g.* fireeye-dynamic-threat-intelligence-cloud.pdf (attached as Exhibit N) encourages customers to subscribe to the FireEye Dynamic Threat Intelligence Cloud service to receive and share data with FireEye).

55.     FireEye instructs users, including employees, to use and test the FireEye Threat

Protection Platform.  For example, FireEye provides auto-configured test environments where users

can safely execute and inspect advanced malware, zero-day, and targeted APT attacks embedded in

common file formats, email attachments, and Web objects.  *See* Malware Analysis Tools, Testing, &

Protection System.pdf (attached as Exhibit O).

56.     FireEye provides FireEye Visio stencils for certain product families to instruct

customers how to use the FireEye Threat Protection Platform.  *See* http://www.fireeye.com/products-and-solutions/visio-stencils.html (attached as Exhibit P).

57.     FireEye provides value added resellers, solution providers and alliance partners with

the FireEye Fuel Partner Program to encourage and expand use of the FireEye Threat Protection

Platform by offering "technical assistance, sales alignment, enablement, and competitive financial

rewards needed to become trusted advisors to their customers and end-to-end solution providers for

the core FireEye threat protection platform."  *See e.g.*

13

http://www.fireeye.com/news-events/press-releases/read/fireeye-introduces-fuel-partner-program (attached as Exhibit Q).

58.     FireEye regularly updates and maintains the FireEye Education Center to provide demonstration, instruction, and technical assistance to users to help them use the FireEye Threat Protection Platform, including the FireEye Web Malware Protection System (MPS).  *See e.g.* https://gm1.geolearning.com/geonext/fireeye/opensite.geo?nav=OpenSiteHome (attached as Exhibit R) providing a course catalog of online courses such as "Web MPS Installation and Configuration."

59.     Defendant has had knowledge of the '780 Patent at least as of the time it learned of this action for infringement and by continuing the actions described above, has had the specific intent to or was willfully blind to the fact that its actions would induce infringement of the '780 Patent.

60.     FireEye actively and intentionally maintains websites, including FireEye's Info Center, to promote the FireEye Threat Protection Platform and to encourage potential customers, users and developers to use the FireEye Threat Protection Platform in the manner described by Finjan.

61.     FireEye actively updates websites, including FireEye's Info Center, to promote the FireEye Threat Protection Platform, including the FireEye Web Malware Protection System and FireEye Dynamic Threat Intelligence, to encourage customers, users and developers to practice the methods taught in the '780 Patent.

## **COUNT III**
### **(Direct Infringement of the '086 Patent pursuant to 35 U.S.C. § 271(a))**

62.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

63.     Defendant has infringed and continues to infringe one or more claims of the '086 Patent in violation of 35 U.S.C. § 271(a).

FIRST AMENDED COMPLAINT
FOR PATENT INFRINGEMENT                              CASE NO. CV 13-03133-SBA

64.     Defendant's infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

65.     Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization or license of Finjan.

66.     Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including but not limited to the FireEye Threat Protection Platform, including the FireEye Malware Protection System and FireEye Dynamic Threat Intelligence, which embody the patented invention of the '086 Patent.

67.     As a result of Defendant's unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

68.     Defendant's infringement of the '086 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

## COUNT IV
### (Indirect Infringement of the '086 Patent pursuant to 35 U.S.C. § 271(b))

69.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

70.     Defendant has induced and continues to induce infringement of at least claims 1-8, 17-23, 31-32, 35-36, 39 and 41 of the '086 Patent under 35 U.S.C. § 271(b).

71.     In addition to directly infringing the '086 Patent, Defendant indirectly infringes the '086 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including but not limited to its users and developers, to perform some of the steps of the method claims, either literally or under the doctrine of equivalents, of the '086 Patent, where all the steps of the method

claims are performed by either FireEye or its customers, users or developers, or some combination thereof.  Defendant knew or was willfully blind to the fact that it was inducing others, including customers, users and developers, to infringe by practicing, either themselves or in conjunction with Defendant, one or more method claims of the '086 Patent.

72.     Defendant knowingly and actively aided and abetted the direct infringement of the '086 Patent by instructing and encouraging its users and developers to use the FireEye Threat Protection Platform.  Such instructions and encouragement include but are not limited to, advising third parties to use the FireEye Threat Protection Platform in an infringing manner, providing a mechanism through which third parties may infringe the '086 Patent, specifically through the use of the FireEye Threat Protection Platform; advertising and promoting the use of the FireEye Threat Protection Platform in an infringing manner, and distributing guidelines and instructions to third parties on how to use the FireEye Threat Protection Platform in an infringing manner.

73.     FireEye regularly updates and maintains the FireEye Info Center to provide demonstration, instruction, and technical assistance to users to help them use the FireEye Threat Protection Platform, including the following webcasts and webinars:

- Next-Generation Threats: Advanced, Targeted…Successful – How Do You Stop Them? (*see e.g.* http://www2.fireeye.com/how-stop-next-generation-threats.html (attached as Exhibit S) instructing users how to "effectively protect against advanced targeted attacks with the FireEye Malware Protection System");

- FireEye Malware Protection System Demo (*see e.g.* http://www2.fireeye.com/WEB2013OnDemandDemo_n.html (attached as Exhibit T) instructing users on "how to stop zero-day, advanced targeted attacks, and APTs in an on-demand demo of the FireEye Malware Protection System (MPS).").

74.     FireEye regularly updates and maintains the FireEye Products and Solutions website to encourage customers and users to use the FireEye Threat Protection Platform, including Advanced Dynamic Threat Intelligence cloud & Intelligence from FireEye.  *See e.g.*

FIRST AMENDED COMPLAINT
FOR PATENT INFRINGEMENT

CASE NO. CV 13-03133-SBA

http://www.fireeye.com/products-and-solutions/dynamic-threat-intelligence-cloud.html (attached as

Exhibit U).

75.     FireEye instructs users, including employees, to use and test the FireEye Threat

Protection Platform.  For example, FireEye provides auto-configured test environments where users

can safely execute and inspect advanced malware, zero-day, and targeted APT attacks embedded in

common file formats, email attachments, and Web objects.  *See* Malware Analysis Tools, Testing, &

Protection System.pdf (attached as Exhibit O).

76.     FireEye provides value added resellers, solution providers and alliance partners with

the FireEye Fuel Partner Program to encourage and expand use of the FireEye Threat Protection

Platform by offering "technical assistance, sales alignment, enablement, and competitive financial

rewards...."



*See* http://www.fireeye.com/partners/ (attached as Exhibit V).

---

17

77. FireEye regularly updates and maintains the FireEye Education Center to provide demonstration, instruction, and technical assistance to users to help them use the FireEye Threat Protection Platform. *See e.g.*

https://gm1.geolearning.com/geonext/fireeye/opensite.geo?nav=OpenSiteHome (attached as Exhibit R) providing a course catalog of online courses such as "FireEye Platform Deployment | Final Activity" and "FireEye Platform Fundamentals."

78. Defendant has had knowledge of the '086 Patent at least as of the time it learned of this action for infringement and by continuing the actions described above, has had the specific intent to or was willfully blind to the fact that its actions would induce infringement of the '086 Patent.

79. FireEye actively and intentionally maintains websites, including FireEye's Info Center, to promote the FireEye Threat Protection Platform and to encourage potential users and developers to use the FireEye Threat Protection Platform in the manner described by Finjan.

80. FireEye actively updates websites, including FireEye's Info Center, to promote the FireEye Threat Protection Platform, including the FireEye Web Malware Protection System and FireEye Dynamic Threat Intelligence, to encourage users and developers to practice the methods taught in the '086 Patent.

## COUNT V
### (Direct Infringement of the '305 Patent pursuant to 35 U.S.C. § 271(a))

81. Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

82. Defendant has infringed and continues to infringe one or more claims of the '305 Patent in violation of 35 U.S.C. § 271(a).

83. Defendant's infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

18

FIRST AMENDED COMPLAINT
FOR PATENT INFRINGEMENT

CASE NO. CV 13-03133-SBA

84.     Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization or license of Finjan.

85.     Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including but not limited to the FireEye Threat Protection Platform, including the FireEye Malware Protection System, which embodies the patented invention of the '305 Patent.

86.     As a result of Defendant's unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

87.     Defendant's infringement of the '305 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

### COUNT VI
### (Indirect Infringement of the '305 Patent pursuant to 35 U.S.C. § 271(b))

88.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

89.     Defendant has induced and continues to induce infringement of at least claims 13-24 of the '305 Patent under 35 U.S.C. § 271(b).

90.     In addition to directly infringing the '305 Patent, Defendant indirectly infringes the '305 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including but not limited to its users, developers and advertisers, to perform some of the steps of the method claims, either literally or under the doctrine of equivalents, of the '305 Patent, where all the steps of the method claims are performed by either FireEye or its customers, users or developers, or some combination thereof.  Defendant knew or was willfully blind to the fact that it was inducing others,

19

including customers, users and developers, to infringe by practicing, either themselves or in

conjunction with Defendant, one or more method claims of the '305 Patent.

91.     Defendant knowingly and actively aided and abetted the direct infringement of the

'305 Patent by instructing and encouraging its users, developers and advertisers to use of the FireEye

Threat Protection Platform.  Such instructions and encouragement include but are not limited to,

advising third parties to use the FireEye Threat Protection Platform in an infringing manner,

providing a mechanism through which third parties may infringe the '305 Patent, specifically through

the use of the FireEye Threat Protection Platform, advertising and promoting the use of the FireEye

Threat Protection Platform in an infringing manner, and distributing guidelines and instructions to

third parties on how to use the FireEye Threat Protection Platform in an infringing manner.

92.     FireEye regularly updates and maintains the FireEye Info Center to provide

demonstration, instruction, and technical assistance to users to help them use the FireEye Threat

Protection Platform, including the following webcasts and webinars:

- Lifecycle of a Breach - 6 Steps Toward Better Security (*see e.g.*
  http://www2.fireeye.com/WEB2013WebcastLifeCycleofaBreach.html (attached as Exhibit W)
  instructs users on "six steps towards better security" using the FireEye Threat Protection
  Platform);

- FireEye Malware Protection System Demo (*see e.g.*
  http://www2.fireeye.com/WEB2013OnDemandDemo_n.html (attached as Exhibit T)
  instructing users on "how to stop zero-day, advanced targeted attacks, and APTs in an on-
  demand demo of the FireEye Malware Protection System (MPS).").

93.     FireEye regularly updates and maintains the FireEye Info Center Videos website (*see*

*e.g.* http://www.fireeye.com/info-center/videos/ (attached as Exhibit X) to encourage customers and

users to partner with FireEye's Threat Protection Platform.

94.     FireEye regularly updates and maintains the FireEye Products and Solutions website to

encourage customers and users to use the FireEye Threat Protection Platform, including Web

FIRST AMENDED COMPLAINT                                    CASE NO. CV 13-03133-SBA
FOR PATENT INFRINGEMENT

Malware Protection System (*see e.g.* http://www.fireeye.com/products-and-solutions/web-security.html (attached as Exhibit Y).

95.     FireEye instructs users, including employees, to use and test the FireEye Threat Protection Platform.  For example, FireEye provides auto-configured test environments where users can safely execute and inspect advanced malware, zero-day, and targeted APT attacks embedded in common file formats, email attachments, and Web objects.  *See* Malware Analysis Tools, Testing, & Protection System.pdf (attached as Exhibit O).

96.     FireEye provides Fuel Alliance Partners with "the ability to easily integrate, test, and promote product interoperability with the open FireEye threat protection platform."  *See e.g.* http://www.fireeye.com/partners/alliances.html (attached as Exhibit Z).

97.     FireEye regularly updates and maintains the FireEye Education Center to provide demonstration, instruction, and technical assistance to users to help them use the FireEye Threat Protection Platform.  *See e.g.* https://gm1.geolearning.com/geonext/fireeye/opensite.geo?nav=OpenSiteHome (attached as Exhibit R) providing a course catalog of online courses such as "FireEye Platform Deployment | Final Activity" and "FireEye Platform Fundamentals."

98.     Defendant has had knowledge of the '305 Patent at least as of the time it learned of this action for infringement and by continuing the actions described above has had the specific intent to or was willfully blind to the fact that its actions would induce infringement of the '305 Patent.

99.     FireEye actively and intentionally maintains websites, including FireEye's Info Center, to promote the FireEye Threat Protection Platform and to encourage potential users, developers and advertisers to use the FireEye Threat Protection Platform in the manner described by Finjan.

FIRST AMENDED COMPLAINT                    CASE NO. CV 13-03133-SBA
FOR PATENT INFRINGEMENT

100.    FireEye actively updates websites, including FireEye's Info Center, to promote the FireEye Threat Protection Platform, including the FireEye Web Malware Protection System, to encourage users, developers and advertisers to practice the methods taught in the '305 Patent.

## COUNT VII
### (Direct Infringement of the '408 Patent pursuant to 35 U.S.C. § 271(a))

101.    Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

102.    Defendant has infringed and continues to infringe one or more claims of the '408 Patent in violation of 35 U.S.C. § 271(a).

103.    Defendant's infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

104.    Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization or license of Finjan.

105.    Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including but not limited to the FireEye Threat Protection Platform, including the FireEye Malware Protection System and FireEye Dynamic Threat Intelligence, which embody the patented invention of the '408 Patent.

106.    As a result of Defendant's unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

107.    Defendant's infringement of the '408 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

FIRST AMENDED COMPLAINT
FOR PATENT INFRINGEMENT

CASE NO. CV 13-03133-SBA

## COUNT VIII
### (Indirect Infringement of the '408 Patent pursuant to 35 U.S.C. § 271(b))

108.    Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

109.    Defendant has induced and continues to induce infringement of at least claims 1-8 and 23-28 of the '408 Patent under 35 U.S.C. § 271(b).

110.    In addition to directly infringing the '408 Patent, Defendant indirectly infringes the '408 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including but not limited to its users and developers, to perform some of the steps of the method claims, either literally or under the doctrine of equivalents, of the '408 Patent, where all the steps of the method claims are performed by either FireEye or its customers, users or developers, or some combination thereof.  Defendant knew or was willfully blind to the fact that it was inducing others, including customers, users and developers, to infringe by practicing, either themselves or in conjunction with Defendant, one or more method claims of the '408 Patent.

111.    Defendant knowingly and actively aided and abetted the direct infringement of the '408 Patent by instructing and encouraging its users and developers to use of the FireEye Threat Protection Platform.  Such instructions and encouragement include but are not limited to, advising third parties to use the FireEye Threat Protection Platform in an infringing manner, providing a mechanism through which third parties may infringe the '408 Patent, specifically through the use of the FireEye Threat Protection Platform; advertising and promoting the use of the FireEye Threat Protection Platform in an infringing manner, and distributing guidelines and instructions to third parties on how to use the FireEye Threat Protection Platform in an infringing manner.

FIRST AMENDED COMPLAINT                                      CASE NO. CV 13-03133-SBA
FOR PATENT INFRINGEMENT

112.    FireEye regularly updates and maintains the FireEye Info Center to provide

demonstration, instruction, and technical assistance to users to help them use the FireEye Threat

Protection Platform, including the following webcasts and webinars:

- Lifecycle of a Breach - 6 Steps Toward Better Security (*see e.g.*
  http://www2.fireeye.com/WEB2013WebcastLifeCycleofaBreach.html (attached as Exhibit W)
  instructs users on "six steps towards better security" using the FireEye Threat Protection
  Platform);

- FireEye Malware Protection System Demo (*see e.g.*
  http://www2.fireeye.com/WEB2013OnDemandDemo_n.html (attached as Exhibit T)
  instructing users on "how to stop zero-day, advanced targeted attacks, and APTs in an on-
  demand demo of the FireEye Malware Protection System (MPS).").

113.    FireEye regularly updates and maintains the FireEye Products and Solutions website to

encourage customers and users to use the FireEye Threat Protection Platform, including Advanced

Dynamic Threat Intelligence cloud & Intelligence from FireEye.  *See e.g.*

http://www.fireeye.com/products-and-solutions/dynamic-threat-intelligence-cloud.html (attached as

Exhibit U).  FireEye regularly updates and maintains the FireEye Info Center Videos website (*see e.g.*

http://www.fireeye.com/info-center/videos/ (attached as Exhibit X) to encourage customers and users

to partnering with FireEye's Threat Protection Platform.

114.    FireEye regularly updates and maintains the FireEye Products and Solutions website to

encourage customers and users to use the FireEye Threat Protection Platform, including Web

Malware Protection System.  *See e.g.* http://www.fireeye.com/products-and-solutions/web-

security.html (attached as Exhibit AA).

115.    FireEye instructs users, including employees, to use and test the FireEye Threat

Protection Platform.  For example, FireEye provides auto-configured test environments where users

can safely execute and inspect advanced malware, zero-day, and targeted APT attacks embedded in

common file formats, email attachments, and Web objects.  *See* Malware Analysis Tools, Testing, &

Protection System.pdf (attached as Exhibit O).

FIRST AMENDED COMPLAINT                           CASE NO. CV 13-03133-SBA
FOR PATENT INFRINGEMENT

116.    FireEye provides value added resellers, solution providers and alliance partners with the FireEye Fuel Partner Program to encourage and expand use of the FireEye Threat Protection Platform by offering "technical assistance, sales alignment, enablement, and competitive financial rewards needed to become trusted advisors to their customers and end-to-end solution providers for the core FireEye threat protection platform." *See e.g.* http://www.fireeye.com/news-events/press-releases/read/fireeye-introduces-fuel-partner-program (attached as Exhibit Q).

117.    FireEye regularly updates and maintains the FireEye Education Center to provide demonstration, instruction, and technical assistance to users to help them use the FireEye Threat Protection Platform.  *See e.g.* https://gm1.geolearning.com/geonext/fireeye/opensite.geo?nav=OpenSiteHome (attached as Exhibit R) providing a course catalog of online courses such as "FireEye Platform Deployment | Final Activity" and "FireEye Platform Fundamentals."

118.    Defendant has had knowledge of the '408 Patent at least as of the time it learned of this action for infringement and by continuing the actions described above has had the specific intent to or was willfully blind to the fact that its actions would induce infringement of the '408 Patent.

119.    FireEye actively and intentionally maintains websites, including FireEye's Info Center, to promote the FireEye Threat Protection Platform and to encourage potential users and developers to use the FireEye Threat Protection Platform in the manner described by Finjan.

120.    FireEye actively updates websites, including FireEye's Info Center, to promote the FireEye Threat Protection Platform, including the FireEye Web Malware Protection System, to encourage users and developers to practice the methods taught in the '408 Patent.

FIRST AMENDED COMPLAINT                                    CASE NO. CV 13-03133-SBA
FOR PATENT INFRINGEMENT

## COUNT IX
### (Direct Infringement of the '822 Patent pursuant to 35 U.S.C. § 271(a))

121.    Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

122.    Defendant has infringed and continues to infringe one or more claims of the '822 Patent in violation of 35 U.S.C. § 271(a).

123.    Defendant's infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

124.    Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization or license of Finjan.

125.    Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including but not limited to the FireEye Threat Protection Platform, including the FireEye Malware Protection System, FireEye Dynamic Threat Intelligence and FireEye Central Management System, which embody the patented invention of the '822 Patent.

126.    As a result of Defendant's unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

127.    Defendant's infringement of the '822 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

## COUNT X
### (Indirect Infringement of the '822 Patent pursuant to 35 U.S.C. § 271(b))

128.    Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

FIRST AMENDED COMPLAINT                                          CASE NO. CV 13-03133-SBA
FOR PATENT INFRINGEMENT

129.    Defendant has induced and continues to induce infringement of at least claims 1-3, 4-8 and 16-27 of the '822 Patent under 35 U.S.C. § 271(b).

130.    In addition to directly infringing the '822 Patent, Defendant indirectly infringes the '822 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including but not limited to its users and developers, to perform some of the steps of the method claims, either literally or under the doctrine of equivalents, of the '822 Patent, where all the steps of the method claims are performed by either FireEye or its customers, users or developers, or some combination thereof.  Defendant knew or was willfully blind to the fact that it was inducing others, including customers, users and developers, to infringe by practicing, either themselves or in conjunction with Defendant, one or more method claims of the '822 Patent.

131.    Defendant knowingly and actively aided and abetted the direct infringement of the '822 Patent by instructing and encouraging its users and developers to use the FireEye Threat Protection Platform.  Such instructions and encouragement include but are not limited to, advising third parties to use the FireEye Threat Protection Platform in an infringing manner, providing a mechanism through which third parties may infringe the '822 Patent, specifically through the use of the FireEye Threat Protection Platform, advertising and promoting the use of the FireEye Threat Protection Platform in an infringing manner, and distributing guidelines and instructions to third parties on how to use the FireEye Threat Protection Platform in an infringing manner.

132.    FireEye regularly updates and maintains the FireEye Info Center to provide demonstration, instruction, and technical assistance to users to help them use the FireEye Threat Protection Platform, including the following webcasts and webinars:

- Cybersecurity Strategies for Small to Medium-sized Businesses (*see e.g.* FireEye_Cybersecurity_Strategies.pdf at 5, available at http://www2.fireeye.com/WEB2013WPCybersecurityStrategiesforSMB_closing-critical-

FIRST AMENDED COMPLAINT                                     CASE NO. CV 13-03133-SBA
FOR PATENT INFRINGEMENT

security-gaps.html (attached as Exhibit L) tells users that "[u]pgrading security defenses is critical.." and to deploy the "industry-leading FireEye platform");

- 5 Design Principles for Advanced Malware Protection (*see e.g.* http://www2.fireeye.com/wp_5principles_adv_malware.html?x=FE_WEB_IC (attached as Exhibit M) provides instructions to users, providing "design principles for advanced malware protection");

- FireEye encourages users to use the FireEye Threat Protection Platform.  For example, Digital Forensics and Incident Response - Why You Need Them Both (*see e.g.* http://www2.fireeye.com/WEB2013WebcastDigitalForensicsandIR.html (attached as Exhibit BB) encourages users to use both the Digital Forensics and Incident Response features of the FireEye Threat Protection Platform).

133.     FireEye regularly updates and maintains the FireEye Products and Solutions website to encourage customers and users to use the FireEye Threat Protection Platform, including Advanced Dynamic Threat Intelligence cloud & Intelligence from FireEye (*see e.g.* http://www.fireeye.com/products-and-solutions/dynamic-threat-intelligence-cloud.html (attached as Exhibit U); FireEye Web Malware Protection System (*see e.g.* http://www.fireeye.com/products-and-solutions/web-security.html (attached as Exhibit AA); and FireEye Central Management System (*see e.g.* http://www.fireeye.com/products-and-solutions/central-management-system.html (attached as Exhibit CC)).

134.     FireEye instructs users, including employees, to use and test the FireEye Threat Protection Platform.  For example, FireEye provides auto-configured test environments where users can safely execute and inspect advanced malware, zero-day, and targeted APT attacks embedded in common file formats, email attachments, and Web objects.  *See* Malware Analysis Tools, Testing, & Protection System.pdf (attached as Exhibit O).

135.     FireEye provides value added resellers, solution providers and alliance partners with the FireEye Fuel Partner Program to encourage and expand use of the FireEye Threat Protection Platform by offering "technical assistance, sales alignment, enablement, and competitive financial

FIRST AMENDED COMPLAINT                                       CASE NO. CV 13-03133-SBA
FOR PATENT INFRINGEMENT

rewards needed to become trusted advisors to their customers and end-to-end solution providers for the core FireEye threat protection platform." *See e.g.*

http://www.fireeye.com/news-events/press-releases/read/fireeye-introduces-fuel-partner-program (attached as Exhibit Q).

136.    FireEye regularly updates and maintains the FireEye Education Center to provide demonstration, instruction, and technical assistance to users to help them use the FireEye Threat Protection Platform, including FireEye Central Management System (CMS). *See e.g.*

https://gm1.geolearning.com/geonext/fireeye/opensite.geo?nav=OpenSiteHome (attached as Exhibit R) providing a course catalog of online courses such as "CMS Installation and Configuration."

137.    Defendant has had knowledge of the '822 Patent at least as of the time it learned of this action for infringement and by continuing the actions described above has had the specific intent to or was willfully blind to the fact that its actions would induce infringement of the '822 Patent.

138.    FireEye actively and intentionally maintains websites, including FireEye's Info Center, to promote the FireEye Threat Protection Platform and to encourage potential users and developers to use the FireEye Threat Protection Platform in the manner described by Finjan.

139.    FireEye actively updates websites, including FireEye's Info Center, to promote the FireEye Threat Protection Platform, including the FireEye Web Malware Protection System, FireEye Dynamic Threat Intelligence and FireEye Central Management System, to encourage users and developers to practice the methods taught in the '822 Patent.

## COUNT XI
### (Direct Infringement of the '633 Patent pursuant to 35 U.S.C. § 271(a))

140.    Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

29

141.    Defendant has infringed and continues to infringe one or more claims of the '633 Patent in violation of 35 U.S.C. § 271(a).

142.    Defendant's infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

143.    Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization or license of Finjan.

144.    Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including but not limited to the FireEye Threat Protection Platform, including the FireEye Malware Protection System, FireEye Dynamic Threat Intelligence and FireEye Central Management System, which embody the patented invention of the '633 Patent.

145.    As a result of Defendant's unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

146.    Defendant's infringement of the '633 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

## COUNT XII
### (Indirect Infringement of the '633 Patent pursuant to 35 U.S.C. § 271(b))

147.    Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

148.    Defendant has induced and continues to induce infringement of at least claims 1-7  and 28-33 of the '633 Patent under 35 U.S.C. § 271(b).

FIRST AMENDED COMPLAINT
FOR PATENT INFRINGEMENT

CASE NO. CV 13-03133-SBA

149.     In addition to directly infringing the '633 Patent, Defendant indirectly infringes the '633 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including but not limited to its users and developers, to perform some of the steps of the method claims, either literally or under the doctrine of equivalents, of the '633 Patent, where all the steps of the method claims are performed by either FireEye or its customers, users or developers, or some combination thereof.  Defendant knew or was willfully blind to the fact that it was inducing others, including customers, users and developers, to infringe by practicing, either themselves or in conjunction with Defendant, one or more method claims of the '633 Patent.

150.     Defendant knowingly and actively aided and abetted the direct infringement of the '633 Patent by instructing and encouraging its users and developers to use the FireEye Threat Protection Platform.  Such instructions and encouragement include but are not limited to, advising third parties to use the FireEye Threat Protection Platform in an infringing manner, providing a mechanism through which third parties may infringe the '633 Patent, specifically through the use of the FireEye Threat Protection Platform; advertising and promoting the use of the FireEye Threat Protection Platform in an infringing manner, and distributing guidelines and instructions to third parties on how to use the FireEye Threat Protection Platform in an infringing manner.

151.     FireEye regularly updates and maintains the FireEye Info Center to provide demonstration, instruction, and technical assistance to users to help them use the FireEye Threat Protection Platform, including the following webcasts and webinars:

- Cybersecurity Strategies for Small to Medium-sized Businesses (*see e.g.* FireEye_Cybersecurity_Strategies.pdf at 5, available at http://www2.fireeye.com/WEB2013WPCybersecurityStrategiesforSMB_closing-critical-security-gaps.html (attached as Exhibit L) tells users that "[u]pgrading security defenses is critical.." and to deploy the "industry-leading FireEye platform");

- 5 Design Principles for Advanced Malware Protection (*see e.g.* http://www.fireeye.com/wp_5principles_adv_malware.html?x=FE_WEB_IC (attached as

31

FIRST AMENDED COMPLAINT
FOR PATENT INFRINGEMENT

CASE NO. CV 13-03133-SBA

Exhibit M) provides instructions to users, including "how to design systems that protect against advanced threats");

- FireEye encourages users to use the FireEye Threat Protection Platform. For example, Digital Forensics and Incident Response - Why You Need Them Both (*see e.g.* http://www2.fireeye.com/WEB2013WebcastDigitalForensicsandIR.html (attached as Exhibit BB) encourages users to use both the Digital Forensics and Incident Response features of the FireEye Threat Protection Platform).

152.    FireEye regularly updates and maintains the FireEye Products and Solutions website to encourage customers and users to use the FireEye Threat Protection Platform, including Advanced Dynamic Threat Intelligence cloud & Intelligence from FireEye (*see e.g.* http://www.fireeye.com/products-and-solutions/dynamic-threat-intelligence-cloud.html (attached as Exhibit U); FireEye Web Malware Protection System (*see e.g.* http://www.fireeye.com/products-and-solutions/web-security.html (attached as Exhibit AA); and FireEye Central Management System (*see e.g.* http://www.fireeye.com/products-and-solutions/central-management-system.html (attached as Exhibit CC).

153.    FireEye instructs users, including employees, to use and test the FireEye Threat Protection Platform. For example, FireEye provides auto-configured test environments where users can safely execute and inspect advanced malware, zero-day, and targeted APT attacks embedded in common file formats, email attachments, and Web objects. *See* Malware Analysis Tools, Testing, & Protection System.pdf (attached as Exhibit O).

154.    FireEye provides value added resellers, solution providers and alliance partners with the FireEye Fuel Partner Program to encourage and expand use of the FireEye Threat Protection Platform by offering "technical assistance, sales alignment, enablement, and competitive financial rewards needed to become trusted advisors to their customers and end-to-end solution providers for the core FireEye threat protection platform." *See e.g.*

FIRST AMENDED COMPLAINT                                    CASE NO. CV 13-03133-SBA
FOR PATENT INFRINGEMENT

http://www.fireeye.com/news-events/press-releases/read/fireeye-introduces-fuel-partner-program (attached as Exhibit Q).

155.   FireEye regularly updates and maintains the FireEye Education Center to provide demonstration, instruction, and technical assistance to users to help them use the FireEye Threat Protection Platform.  *See e.g.* https://gm1.geolearning.com/geonext/fireeye/opensite.geo?nav=OpenSiteHome (attached as Exhibit R) providing a course catalog of online courses such as "FireEye Platform Deployment| Final Activity" and "FireEye Platform Fundamentals.").

156.   Defendant has had knowledge of the '633 Patent at least as of the time it learned of this action for infringement and by continuing the actions described above has had the specific intent to or was willfully blind to the fact that its actions would induce infringement of the '633 Patent.

157.   FireEye actively and intentionally maintains websites, including FireEye's Info Center, to promote the FireEye Threat Protection Platform and to encourage potential users and developers to use the FireEye Threat Protection Platform in the manner described by Finjan.

158.   FireEye actively updates websites, including FireEye's Info Center, to promote the FireEye Threat Protection Platform, including the FireEye Web Malware Protection System, FireEye Dynamic Threat Intelligence and FireEye Central Management System, to encourage users and developers to practice the methods taught in the '633 Patent.

## **COUNT XIII**
### **(Direct Infringement of the '844 Patent pursuant to 35 U.S.C. § 271(a))**

159.   Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

160.   Defendant has infringed and continues to infringe one or more claims of the '844 Patent in violation of 35 U.S.C. § 271(a).

33

FIRST AMENDED COMPLAINT                                      CASE NO. CV 13-03133-SBA
FOR PATENT INFRINGEMENT

161.     Defendant's infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

162.     Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization or license of Finjan.

163.     Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including but not limited to the FireEye Threat Protection Platform, including the FireEye Malware Protection System, FireEye Dynamic Threat Intelligence and FireEye Central Management System, which embody the patented invention of the '844 Patent.

164.     As a result of Defendant's unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

165.     Defendant's infringement of the '844 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

## COUNT XIV
### (Indirect Infringement of the '844 Patent pursuant to 35 U.S.C. § 271(b))

166.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

167.     Defendant has induced and continues to induce infringement of at least claims 1-14 and 22-27 of the '844 Patent under 35 U.S.C. § 271(b).

168.     In addition to directly infringing the '844 Patent, Defendant indirectly infringes the '844 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including but not limited to its users and developers, to perform some of the steps of the method claims, either

FIRST AMENDED COMPLAINT
FOR PATENT INFRINGEMENT

CASE NO. CV 13-03133-SBA

literally or under the doctrine of equivalents, of the '844 Patent, where all the steps of the method claims are performed by either FireEye or its customers, users or developers, or some combination thereof.  Defendant knew or was willfully blind to the fact that it was inducing others, including customers, users and developers, to infringe by practicing, either themselves or in conjunction with Defendant, one or more method claims of the '844 Patent.

169.   Defendant knowingly and actively aided and abetted the direct infringement of the '844 Patent by instructing and encouraging its users and developers to use the FireEye Threat Protection Platform.  Such instructions and encouragement include but are not limited to, advising third parties to use the FireEye Threat Protection Platform in an infringing manner, providing a mechanism through which third parties may infringe the '844 Patent, specifically through the use of the FireEye Threat Protection Platform, advertising and promoting the use of the FireEye Threat Protection Platform in an infringing manner, and distributing guidelines and instructions to third parties on how to use the FireEye Threat Protection Platform in an infringing manner.

170.   FireEye regularly updates and maintains the FireEye Info Center to provide demonstration, instruction, and technical assistance to users to help them use the FireEye Threat Protection Platform, including the following:

- Life Cycle of a Breach – 6 Steps Toward Better Security (*see e.g.* http://www2.fireeye.com/WEB2013WebcastLifeCycleofaBreach.html (attached as Exhibit W) instructing users in "[h]ow to connect the dots to better understand and mitigate attacks" and "[h]ow to evolve your approach from cyber defense to cyber resilience";

- Definitive Guide to Next-Generation Threat Protection (*see e.g.* http://www2.fireeye.com/definitive-guide-next-gen-threats.html?x=FE_WEB_IC (attached as Exhibit DD) instructing users in "[s]electing the right NGTP solution for your organization").

171.   FireEye regularly updates and maintains the FireEye Products and Solutions website to encourage customers and users to use the FireEye Threat Protection Platform, including Advanced Dynamic Threat Intelligence cloud & Intelligence from FireEye (*see e.g.*

FIRST AMENDED COMPLAINT
FOR PATENT INFRINGEMENT

CASE NO. CV 13-03133-SBA

http://www.fireeye.com/products-and-solutions/dynamic-threat-intelligence-cloud.html (attached as Exhibit U); FireEye Web Malware Protection System (*see e.g.* http://www.fireeye.com/products-and-solutions/web-security.html (attached as Exhibit AA); and FireEye Central Management System (*see e.g.* http://www.fireeye.com/products-and-solutions/central-management-system.html (attached as Exhibit CC).

172.     FireEye instructs users, including employees, to use and test the FireEye Threat Protection Platform.  For example, FireEye provides auto-configured test environments where users can safely execute and inspect advanced malware, zero-day, and targeted APT attacks embedded in common file formats, email attachments, and Web objects.  *See* Malware Analysis Tools, Testing, & Protection System.pdf (attached as Exhibit O).

173.     FireEye provides value added resellers, solution providers and alliance partners with the FireEye Fuel Partner Program to encourage and expand use of the FireEye Threat Protection Platform by offering "technical assistance, sales alignment, enablement, and competitive financial rewards needed to become trusted advisors to their customers and end-to-end solution providers for the core FireEye threat protection platform."  *See e.g.* http://www.fireeye.com/news-events/press-releases/read/fireeye-introduces-fuel-partner-program (attached as Exhibit Q).

174.     FireEye regularly updates and maintains the FireEye Education Center to provide demonstration, instruction, and technical assistance to users to help them use the FireEye Threat Protection Platform.  *See e.g.* https://gm1.geolearning.com/geonext/fireeye/opensite.geo?nav=OpenSiteHome (attached as Exhibit R) providing a course catalog of online courses such as "FireEye Platform Deployment | Final Activity" and "FireEye Platform Fundamentals."

FIRST AMENDED COMPLAINT
FOR PATENT INFRINGEMENT

CASE NO. CV 13-03133-SBA

175. Defendant has had knowledge of the '844 Patent at least as of the time it learned of this action for infringement and by continuing the actions described above has had the specific intent to or was willfully blind to the fact that its actions would induce infringement of the '844 Patent.

176. FireEye actively and intentionally maintains websites, including FireEye's Info Center, to promote the FireEye Threat Protection Platform and to encourage potential users and developers to use the FireEye Threat Protection Platform in the manner described by Finjan.

177. FireEye actively updates websites, including FireEye's Info Center, to promote the FireEye Threat Protection Platform, including the FireEye Web Malware Protection System, FireEye Dynamic Threat Intelligence and FireEye Central Management System, to encourage users and developers to practice the methods taught in the '844 Patent.

## **PRAYER FOR RELIEF**

WHEREFORE, Finjan prays for judgment and relief as follows:

A. An entry of judgment holding Defendant has infringed, is infringing, and has induced infringement of the '780 Patent, the '086 Patent, the '408 Patent, the '305 Patent, the '822 Patent, the '633 Patent and the '844 Patent;

B. A preliminary and permanent injunction against Defendant and its officers, employees, agents, servants, attorneys, instrumentalities, and/or those in privity with them, from infringing, or inducing the infringement of the '780 Patent, the '086 Patent, the '408 Patent, the '305 Patent, the '822 Patent, the '633 Patent and the '844 Patent, and for all further and proper injunctive relief pursuant to 35 U.S.C. § 283;

C. An award to Finjan of such damages as it shall prove at trial against Defendant that is adequate to fully compensate Finjan for Defendant's infringement of the 780 Patent, the '086 Patent,

the '408 Patent, the '305 Patent, the '822 Patent, the '633 Patent and the '844 Patent said damages to be no less than a reasonable royalty;

      D.     A finding that this case is "exceptional" and an award to Finjan of its costs and reasonable attorney's fees, as provided by 35 U.S.C. § 285;

      E.     An accounting of all infringing sales and revenues; and

      F.     Such further and other relief as the Court may deem proper and just.


Respectfully submitted,

Dated:  August 16, 2013          By:  */s/ Paul J. Andre*
                                        Paul J. Andre
                                        Lisa Kobialka
                                        James Hannah
                                        KRAMER LEVIN NAFTALIS
                                        & FRANKEL LLP
                                        990 Marsh Road
                                        Menlo Park, CA 94025
                                        Telephone: (650) 752-1700
                                        Facsimile: (650) 752-1800
                                        pandre@kramerlevin.com
                                        lkobialka@kramerlevin.com
                                        jhannah@kramerlevin.com

                                        *Attorneys for Plaintiff*
                                        FINJAN, INC.

FIRST AMENDED COMPLAINT                CASE NO. CV 13-03133-SBA
FOR PATENT INFRINGEMENT

## DEMAND FOR JURY TRIAL

Finjan demands a jury trial on all issues so triable.

Respectfully submitted,

Dated: August 16, 2013

By: */s/ Paul J. Andre*
Paul J. Andre
Lisa Kobialka
James Hannah
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 752-1700
Facsimile: (650) 752-1800
pandre@kramerlevin.com
lkobialka@kramerlevin.com
jhannah@kramerlevin.com

*Attorneys for Plaintiff*
FINJAN, INC.

39

FIRST AMENDED COMPLAINT                                    CASE NO. CV 13-03133-SBA
FOR PATENT INFRINGEMENT

## <u>CERTIFICATE OF SERVICE</u>

I, Paul Andre, am employed in the Menlo Park, California office of Kramer Levin Naftalis & Frankel LLP.  I am over the age of 18 and not a party to the within action.  My business address is 990 Marsh Road, Menlo Park, California, 94025.

On August 16, 2013, I caused a true and correct copy of the following document:

**FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

to be served by First Class U.S. Mail and by electronic mail addressed as follows:

> Alexa E. King, Esq.
> FireEye, Inc.
> 1440 McCarthy Blvd.
> Milpitas, CA  95035
> Alexa.king@FireEye.com

I declare under penalty of perjury that the forgoing is true and correct.  Executed on August 16, 2013, at Menlo Park, California.

> */s/ Paul J. Andre*
> Paul J. Andre

FIRST AMENDED COMPLAINT
FOR PATENT INFRINGEMENT                                    CASE NO. CV 13-03133-SBA