UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

Ryan W. Cobb,
DLA Piper LLP (US),
401 B St., Ste 1700
San Diego, CA  92101

**MAILED**

DEC 0 5 2013

CENTRAL REEXAMINATION UNIT

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/013,017*.

PATENT NO. *7058822*.

ART UNIT *3992*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

| *Order Granting / Denying Request For Ex Parte Reexamination* | Control No. | Patent Under Reexamination |
|---|---|---|
| | 90/013,017 | 7058822 |
| | Examiner | Art Unit |
| | JASON PROCTOR | 3992 |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed <u>07 October 2013</u> has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments:  a)☐  PTO-892,      b)☒  PTO/SB/08,      c)☐  Other: _____

1. ☒   The request for *ex parte* reexamination is GRANTED.

          RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional):  TWO MONTHS  from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

2. ☐   The request for *ex parte* reexamination is DENIED.

This decision is not appealable (35 U.S.C. 303(c)).  Requester may seek review by petition to the Commissioner under 37 CFR 1.181 within ONE MONTH from the mailing date of this communication (37 CFR 1.515(c)).  **EXTENSION OF TIME TO FILE SUCH A PETITION UNDER 37 CFR 1.181  ARE AVAILABLE ONLY BY PETITION TO SUSPEND OR WAIVE THE  REGULATIONS UNDER 37 CFR 1.183.**

In due course, a refund under 37 CFR 1.26 ( c ) will be made to requester:

          a) ☐  by Treasury check or,

          b) ☐  by credit to Deposit Account No. _____,  or

          c) ☐  by credit to a credit card account, unless otherwise notified (35 U.S.C. 303(c)).

| /Jason Proctor/ | | |
| Primary Examiner, Art Unit 3992 | | |

cc:Requester ( if third party requester )
U.S. Patent and Trademark Office
PTOL-471 (Rev. 08-06)          Office Action in *Ex Parte* Reexamination          Part of Paper No. 20131029

Application/Control Number: 90/013,017                                    Page 2
Art Unit: 3992

<div align="center">

**ORDER GRANTING**

***EX PARTE* REEXAMINATION**

</div>

A Substantial New Question of Patentability affecting at least one claim of US Patent No.
7,058,822 issued to Edery et al. ("the '822 Patent") is raised by the Request for *Ex Parte*
Reexamination filed on 7 October 2013 ("the Request").   For the reasons set forth below, *Ex
Parte* Reexamination is ordered for claims 1-8 and 16-27 of the '822 Patent.

Claims 9-15 and 28-35 are not subject to this reexamination.


The Patent Owner agreed to waive its right to file a Patent Owner's statement under 35
U.S.C. § 304 in the event that reexamination is ordered for this above-specified patent.   See
Interview Summary, 22 October 2013.   Accordingly, a Non-Final Rejection will be entered
concurrently with this Order.


<div align="center">

**I.       REFERENCES CITED**

</div>

US Patent No. 5,983,348 issued 9 November 1999 to Ji ("Ji")

US Patent No. 6,058,482 issued 2 May 2000 to Liu ("Liu")

US Patent No. 5,974,549 issued 26 October 1999 to Golan ("Golan")


<div align="center">

**II.       PROSECUTION HISTORY**

</div>

The '822 Patent issued from US Patent Application 09/861,229 ("the '229 Application").
During prosecution, the Examiner rejection application claims 1-7, 16-20, 28-34, 43-51, and 60-

Application/Control Number: 90/013,017                                    Page 3
Art Unit: 3992

76 under 35 U.S.C. § 102(e) as being anticipated by Golan.  The Examiner indicated that claims

8-15, 21-27, 35-42, and 52-59 would be allowable if rewritten in independent form.  ('229

Application, Non-Final Rejection, 7 December 2004).

    In response, Applicant corrected formal matters in the application; amended claims 8-15,

21-27, 35-42, and 52-59 to independent form as per the Examiner's instruction; and canceled the

claims 1-7, 16-20, 28-34, 43-51, and 60-76 which were rejected over the prior art.  ('229

Application, Response filed 11 March 2005).

    The Examiner then issued a Notice of Allowance and indicated that the original subject

matter of application claims 8, 11, and 35 were the allowable features:

> As per claim 8, it was not found to be taught in the prior art of performing
> an analysis on downloadable information, the analysis produces detection
> indicators indicating whether there is a correspondence between a downloadable
> information characteristic and a respective executable code characteristic and
> evaluating the detection indicators to determine whether the downloadable
> information includes executable code.
> As per claim 11, it was not found to be taught in the prior art of causing
> mobile protection code to be communicated to an information destination if the
> downloadable information is determined to include executable code wherein the
> causing mobile protection code to be communicated comprises forming a
> sandboxed package including the mobile protection code and the downloadable
> information and the sandboxed package is then communicated to an information
> destination.
> […]
> As per claims 35 and 52, it was not found to be taught in the prior art of
> causing mobile protection code to be executed by a mobile code executor at a
> downloadable information destination in that the operations of executable code as
> a destination, if attempted, will be processed by the mobile protection code and
> forming a sandboxed package including mobile protection code and
> downloadable information and causing the sandboxed package to be delivered to
> a downloadable information destination.
> ('229 Application, Notice of Allowance, 16 June 2005, pages 2-3)

    Application claims 8, 11, and 35 were issued as '822 Patent claims 1, 4, and 16,

respectively.

Application/Control Number: 90/013,017                                    Page 4
Art Unit: 3992

### III.   CRITERIA FOR DECIDING REQUEST

According to MPEP 2242, the presence or absence of "a substantial new question of patentability" determines whether or not reexamination is ordered. A prior art patent or printed publication raises a substantial question of patentability where there is a substantial likelihood that a reasonable Examiner would consider the prior art patent or printed publication important in deciding whether or not the claim is patentable.

If the prior art patents and printed publications raise a substantial question of patentability of at least one claim of the patent, then a substantial new question of patentability is present, unless the same question of patentability has already been decided by (A) a final holding of invalidity, after all appeals, or (B) by the Office in a previous examination or pending reexamination of the patent.

On November 2, 2002, Public Law 107-273 was enacted. Title III, Subtitle A, Section 13105, part (a) of the Act revised the reexamination statute by adding the following new last sentence to 35 U.S.C. § 303(a) and § 312(a):

> The existence of a substantial new question of patentability is not precluded by the fact that a patent or printed publication was previously cited by or to the Office or considered by the Office.

For any reexamination ordered on or after November 2, 2002, the effective date of the statutory revision, reliance on previously cited/considered art, i.e., "old art," does not necessarily preclude the existence of a substantial new question of patentability (SNQ) that is based exclusively on that old art. Rather, determinations on whether a SNQ exists in such an instance shall be based upon a fact-specific inquiry done on a case-by-case basis. For example, an SNQ may be based

Application/Control Number: 90/013,017                                  Page 5
Art Unit: 3992

solely on old art where the old art is being presented/viewed in a new light, or in a different way,

as compared with its use in the earlier examination(s), in view of a material new argument or

interpretation presented in the request. See MPEP 2242 (II)(A).

      With respect to independent claims 1, 4, and 11 of the '822 Patent, a reasonable Examiner

would consider a prior art patent or printed publication important in deciding whether or not the

claim is patentable where the patent or printed publication appears to disclose the features

identified by the original Examiner as allowable subject matter.


## IV.      DETERMINATION OF SUBSTANTIAL
## NEW QUESTIONS

      The Request initially alleges that 3 Substantial New Questions of Patentability ("SNQ")

are raised by the cited references, identifying "the Ji patent alone, the Ji patent in combination

with the Liu patent, and the Ji patent in combination with the Golan patent" (Request, page 3),

but later alleges that 4 SNQs are raised ("SNQP 1-4", Request, pages 7-15). Requester arrives at

the additional SNQ by spreading the discussion of "the Ji patent in combination with the Liu

patent" across two groupings of claims. Since each of "SNQP 1-4" purports to meet the

standards of MPEP 2216 and 2242, the 4 proposed SNQs of the Request, pages 7-15, will be

considered.


**SNQP 1.**      **Requester alleges that Ji raises an SNQ against claims 1-8 and 16-27 (Brief,**

              **pages 7-12)**

      Ji is disclosed as related prior art in the specification of the '822 Patent:

Application/Control Number: 90/013,017                                                          Page 6
Art Unit: 3992

> It is observed by this inventor, for example, that Downloadable
> information comprising program code can include distributable components (e.g.
> Java™ applets and JavaScript scripts, ActiveX™ controls, Visual Basic, add-ins
> and/or others). It can also include, for example, application programs, Trojan
> horses, multiple compressed programs such as zip or meta files, among others.
> U.S. Pat. No. 5,983,348 to Shuang [*sic* - the inventor's name is "Shuang Ji"],
> however, teaches a protection system for protecting against only distributable
> components including "Java applets or ActiveX controls", and further does so
> using resource intensive and high bandwidth static Downloadable content and
> operational analysis, and modification of the Downloadable component; Shuang
> [*sic* — "Ji"] further fails to detect or protect against additional program code
> included within a tested Downloadable.
> ('822 Patent, 1:55 – 2:4)

Ji is <u>old art</u> presented by the Request in a new light since the original examination did not

consider the reference beyond Applicant's own disclosure.

**Regarding claim 1**, Requester alleges that Ji discloses the features identified by the

original Examiner as allowable subject matter:

> performing an analysis on downloadable information, the analysis produces
> detection indicators indicating whether there is a correspondence between a
> downloadable information characteristic and a respective executable code
> characteristic and evaluating the detection indicators to determine whether the
> downloadable information includes executable code.

However, the analyses of Ji do not determine whether the downloadable information is

<u>executable</u>, they determine whether <u>executable code is potentially malicious</u>.   More specifically:

> Upon receipt of a particular Java applet, the HTTP proxy server 32, which
> is software running on server machine 20 and which has associated scanner
> software 26, then scans the applet and instruments it using an instrumenter 28
> which is part of the scanner software 26. <u>(Downloaded non-applets are not
> scanned.)</u> The instrumented applet is subject to a special digital signer which is an
> (optional) part of the scanner 26. The scanned (instrumented) applet, which has
> been digitally signed is then downloaded to the web browser 22 in the client 14.
> The applet is then conventionally interpreted by the web browser 22 and its
> instructions are executed. The execution is monitored by the monitor package
> software, also downloaded from scanner 26, in the web browser 22 in accordance

Application/Control Number: 90/013,017                                    Page 7
Art Unit: 3992

> with this invention for security purposes. Thus static scanning is performed by the
> HTTP proxy server 32 and dynamic scanning by the web browser 22.
> (Ji, 4:66 – 5:15; cited by the Request, page 18; emphasis added)

Ji discloses the scanning methods in more detail (and other features), but does not

disclose any specific technique to distinguish executable code from other downloadable

information. Instead, Ji simply discloses that "non-applets are not scanned" (*Id.*), while code that

is *already known to be executable* is scanned according to Ji's methods. Ji discloses techniques

to determine <u>whether</u> executable code is <u>potentially malicious,</u> but does not disclose techniques

to determine <u>whether</u> downloadable information is <u>executable</u>.

**Therefore, Ji fails to raise an SNQ against claim 1 of the '822 Patent.**

**Regarding claim 4,** Requester alleges that Ji discloses the features identified by the

original Examiner as allowable subject matter:

> causing mobile protection code to be communicated to an information destination
> if the downloadable information is determined to include executable code wherein
> the causing mobile protection code to be communicated comprises forming a
> sandboxed package including the mobile protection code and the downloadable
> information and the sandboxed package is then communicated to an information
> destination.

The '822 Patent provides the following description of a "sandboxed package"

> The sandboxed package includes mobile protection code ("MPC") for
> causing one or more predetermined malicious operations or operation
> combinations of a Downloadable to be monitored or otherwise intercepted. The
> sandboxed package also includes protection policies (operable alone or in
> conjunction with further Downloadable-destination stored or received
> policies/MPCs) for causing one or more predetermined operations to be
> performed if one or more undesirable operations of the Downloadable is/are
> intercepted. The sandboxed package can also include a corresponding
> Downloadable and can provide for initiating the Downloadable in a protective
> "sandbox".
> ('822 Patent, 3:6-18)

Application/Control Number: 90/013,017                                    Page 8
Art Unit: 3992

Although Ji does not use the term "sandboxed package," the prior art discloses the

equivalent features and functionality:

> At this point the applets are statically scanned at the server by the scanner
> looking for particular instructions which may be problematic in a security context.
> The identified problematic instructions are then each instrumented, e.g. special
> code is inserted before and after each problematic instruction, where the special
> code calls respectively a prefilter and a post filter. Alternatively, the
> instrumentation involves replacing the problematic instruction with another
> instruction which calls a supplied function.
> The instrumented applet is then downloaded from the server to the client
> (local computer), at which time the applet code is conventionally interpreted by
> the client web browser and it begins to be executed. As the applet code is
> executed, each instrumented instruction is monitored by the web browser using a
> monitor package which is part of the scanner and delivered to the client side.
> Upon execution, each instrumented instruction is subject to a security check. If
> the security policy (which has been pre-established) is violated, that particular
> instruction which violates the security policy is not executed, and instead a report
> is made and execution continues, if appropriate, with the next instruction.
> (Ji, 3:23-46)

> The pre and post filter and monitoring package security policy functions)
> are combined with the instrumented applet code in a single JAR (Java archive)
> file format at the server 32, and downloaded to the web browser 22 in client
> machine 14. From this point on, the server 32 is virtually disconnected from this
> server-client session. All the monitoring and applet code is executed in the web
> browser 22 in the client machine 14. The only time that the server 32 may be
> again involved during this particular session is when the applet is determined to
> be dangerous (i.e. including malicious code that violates the security policy) or
> the applet has completed execution, and a report is sent back to the server 32 by
> the monitoring code in the scanner 26. A report is optional in this second case.
> (Ji, 6:38-51)

Accordingly, a reasonable Examiner would consider Ji important in deciding whether or

not the claim is patentable.  **Therefore, Ji raises an SNQ against at least claim 4 of the '822**

**Patent.**

Application/Control Number: 90/013,017                                    Page 9
Art Unit: 3992

**Regarding claim 16**, Requester alleges that Ji discloses the features identified by the

original Examiner as allowable subject matter:

> causing mobile protection code to be executed by a mobile code executor at a
> downloadable information destination in that the operations of executable code as
> a destination, if attempted, will be processed by the mobile protection code and
> forming a sandboxed package including mobile protection code and
> downloadable information and causing the sandboxed package to be delivered to
> a downloadable information destination.

The '822 Patent describes a "sandboxed package" at ('822 Patent, 3:6-18).

Although Ji does not use the term "sandboxed package," the prior art discloses the

equivalent features and functionality (Ji, 3:23-46; 6:38-51), shown above.

Accordingly, a reasonable Examiner would consider Ji important in deciding whether or

not the claim is patentable. **Therefore, Ji raises an SNQ against at least claim 16 of the '822**

**Patent.**

**SNQP 2.        Requester alleges that Ji in view of Liu raises an SNQ against claims 1-3**

**(Brief, pages 12-13)**

As set forth above in SNQ 1, Ji is old art. Liu was neither cited nor discussed during the

prosecution of the '229 Application. Liu is new art. The Request presents Ji in a new light since

the original examination did not consider the combination of Ji and Liu.

**Regarding claim 1**, Requester alleges that Ji in view of Liu teaches the features

identified by the original Examiner as allowable subject matter:

> performing an analysis on downloadable information, the analysis produces
> detection indicators indicating whether there is a correspondence between a
> downloadable information characteristic and a respective executable code

characteristic and evaluating the detection indicators to determine whether the downloadable information includes executable code.

As set forth above in SNQ 1, Ji does not disclose techniques to determine whether the downloadable information is <u>executable,</u> instead the disclosed techniques determine whether <u>executable code is potentially malicious</u>.

However, Liu discloses the claimed feature, wherein the "detection indicators" correspond to "tags" which indicate whether the downloaded information contains executable code:

> When the requested network information should contain keywords such as applet tags, the remote server generates keywords having distinctive references to corresponding executable code, and stores the corresponding executable code using the new, distinctive reference. Continuing with reference to Java, for example, an applet tag is generated having a new, distinctive Java class name, and the corresponding applet bytecode is stored under this new class name. The requested network information, such as a web page, is then generated and transmitted to the user, with all keywords (such as applet tags) having distinctive references, such as unique applet class names.
>
> Subsequently, a user may invoke a keyword by, for example, mouse clicking on a graphical user interface of a web page. Unknown or transparent to the user, the keyword invoked now uniquely designates the corresponding code stored only at the remote server. When the remote server receives the request for code as invoked via the user's web browser, the corresponding executable code having the distinctive reference is then downloaded to the user for local execution.
> (Liu, 3:19-40)
>
> Continuing to refer to FIG. 2, the requested web page may include special or designated keywords which are designed to invoke, call or specify a network programming language. For example, Java applications are invoked or called utilizing a keyword referred to as a "tag" and, more specifically, an "applet" tag ("<APPLET>"). (Other versions of HTML, such as HTML 4.0, are also designed to support a new tag referred to as an object tag ("<OBJECT>"), which is planned as an expansion or replacement of the applet tag; as a consequence, as used herein, reference to an applet tag shall also mean and include reference to other keywords or tags which invoke or call an executable network programming language, such as the object tag). A keyword such as an applet tag typically has

Application/Control Number: 90/013,017                                    Page 11
Art Unit: 3992

required or desirable attributes, generally, a name or reference attribute, and an amount of space (height and width attributes) the applet will use when displayed. For the purposes herein, the keyword need only have a name or reference attribute that designates or otherwise corresponds to executable code, i.e., the name or reference attribute corresponds to or refers to the code (wherever located) which will be downloaded for execution when the keyword is invoked. As more specifically related to Java, a Java program to be downloaded and executed is in computer-readable bytecode form having a "class" extension, converted from Java source code using a Java compiler. As an object-oriented programming language, Java defines a "class" as a collection of data and methods (procedures or functions) which operate on the data. As a consequence, a Java applet utilizes, as such a reference attribute, a parameter known as "CODE" to name or designate the class of Java bytecode to be downloaded for execution by the web browser. In addition, and more generally, such Java bytecode may also be designated utilizing a parameter "CODEBASE" to specify a name and location of the class of Java bytecode residing on another server 130, i.e., residing on a server 130 other than the server providing the web page, or may be designated utilizing an archive parameter to specify an entire group of Java class files for faster, simultaneous downloading.
(Liu, 6:19-57)

Accordingly, a reasonable Examiner would consider Ji in view of Liu important in deciding whether or not the claim is patentable. **Therefore, Ji in view of Liu raises an SNQ against at least claim 1 of the '822 Patent.**


**SNQP 3.        Requester alleges that Ji in view of Liu raises an SNQ against claims 4-8 and 16-27 (Brief, pages 13-14)**

As set forth above in SNQ 2, Ji is old art while Liu is new art. The Request presents Ji in a new light since the original examination did not consider the combination of Ji and Liu.


**Regarding claim 4**, Requester alleges that Ji in view of Liu teaches the features identified by the original Examiner as allowable subject matter:

> causing mobile protection code to be executed by a mobile code executor at a downloadable information destination in that the operations of executable code as a destination, if attempted, will be processed by the mobile protection code and forming a sandboxed package including mobile protection code and downloadable information and causing the sandboxed package to be delivered to a downloadable information destination.

The '822 Patent describes a "sandboxed package" at ('822 Patent, 3:6-18).

Although Ji does not use the term "sandboxed package," the prior art discloses the equivalent features and functionality (Ji, 3:23-46; 6:38-51), shown above.

Further, Liu discloses the claimed feature:

> Given that such ultimately foreign program code is downloaded for local execution, there are inherent security issues that could arise and, therefore, which have been addressed and circumvented in advance within the Java architecture. The Java architecture includes security features that prevent such downloaded programs from interfering with the user's private or non-network resources. Referred to as the "Java sandbox", the Java architecture prevents an untrusted or potentially malicious applet (downloaded to the local end system from a remote web server) from reading, writing, or executing private resources, such as the local hard drive. Among other security features, the Java language is a typesafe language, which does not allow pointers to read or write to arbitrary memory locations. In addition, prior to execution of an incoming applet, the applet is run through a Java bytecode verifier, which examines the bytecode for potentially illegal commands, such that only legal applets get executed by the JVM at the local end system. See, e.g., Java Security Whitepaper, available at the Sun web sites java.sun.com and javasoft.com; A. Tanenbaum, Computer Networks (Prentice-Hall, 3d ed. 1996), at 718-20; D. Flanagan, Java in a Nutshell, (O'Reilly, 2d ed. 1997), at 7, 139-43.
> (Liu, 2:19-41)

> The remote server 110 then transmits the corresponding requested code (and any requested data), and such code may then be executed by the browser of the end system 150, such as the JVM. As mentioned above, because executable code is downloaded from a potentially unknown or untrustworthy source, the Java architecture has been designed to prevent security breaches which may originate from a network, such as from a remote server 110, utilizing features such as the Java sandbox and the Java bytecode verifier. Also as mentioned above, the

Application/Control Number: 90/013,017            Page 13
Art Unit: 3992

> present invention provides for additional protection against security breaches that
> may originate locally, i.e., from a local end system 150 or from a local server 120.
> (Liu, 7:1-14)

Accordingly, a reasonable Examiner would consider Ji in view of Liu important in

deciding whether or not the claim is patentable. **Therefore, Ji in view of Liu raises an SNQ**

**against at least claim 4 of the '822 Patent.**

**Regarding claim 16**, Requester alleges that Ji in view of Liu teaches the features

identified by the original Examiner as allowable subject matter:

> causing mobile protection code to be executed by a mobile code executor at a
> downloadable information destination in that the operations of executable code as
> a destination, if attempted, will be processed by the mobile protection code and
> forming a sandboxed package including mobile protection code and
> downloadable information and causing the sandboxed package to be delivered to
> a downloadable information destination.

The '822 Patent describes a "sandboxed package" at ('822 Patent, 3:6-18).

Although Ji does not use the term "sandboxed package," the prior art discloses the

equivalent features and functionality (Ji, 3:23-46; 6:38-51), shown above.

Further, Liu discloses the claimed feature (Liu, 2:19-41; 7:1-14), shown above.

Accordingly, a reasonable Examiner would consider Ji in view of Liu important in

deciding whether or not the claim is patentable. **Therefore, Ji in view of Liu raises an SNQ**

**against at least claim 16 of the '822 Patent.**

**SNQP 4.**        **Requester alleges that Ji in view of Golan raises an SNQ against claims 4-8**

                 **and 16-27 (Brief, pages 14-15)**

Application/Control Number: 90/013,017                        Page 14
Art Unit: 3992

As set forth above in SNQ 1, Ji is <u>old art</u>. Golan was cited by the Examiner and used in prior art rejections in the prosecution of the '229 Application. Golan is <u>old art</u>. The Request presents Ji and Golan in a new light since the original examination did not consider the combination of Ji and Golan.

**Regarding claim 4**, Requester alleges that Ji in view of Golan teaches the features identified by the original Examiner as allowable subject matter:

> causing mobile protection code to be executed by a mobile code executor at a downloadable information destination in that the operations of executable code as a destination, if attempted, will be processed by the mobile protection code and forming a sandboxed package including mobile protection code and downloadable information and causing the sandboxed package to be delivered to a downloadable information destination.

The '822 Patent describes a "sandboxed package" at ('822 Patent, 3:6-18).

During the original prosecution, the Examiner found this feature to be allowable over the disclosure of Golan.

Although Ji does not use the term "sandboxed package," the prior art discloses the equivalent features and functionality (Ji, 3:23-46; 6:38-51), shown above.

Accordingly, a reasonable Examiner would consider Ji in view of Golan important in deciding whether or not the claim is patentable. **Therefore, Ji in view of Golan raises an SNQ against at least claim 4 of the '822 Patent.**

**Regarding claim 16**, Requester alleges that Ji in view of Golan teaches the features identified by the original Examiner as allowable subject matter:

Application/Control Number: 90/013,017                                            Page 15
Art Unit: 3992

> causing mobile protection code to be executed by a mobile code executor at a
> downloadable information destination in that the operations of executable code as
> a destination, if attempted, will be processed by the mobile protection code and
> forming a sandboxed package including mobile protection code and
> downloadable information and causing the sandboxed package to be delivered to
> a downloadable information destination.

The '822 Patent describes a "sandboxed package" at ('822 Patent, 3:6-18).

During the original prosecution, the Examiner found this feature to be allowable over the

disclosure of Golan.

Although Ji does not use the term "sandboxed package," the prior art discloses the

equivalent features and functionality (Ji, 3:23-46; 6:38-51), shown above.

Accordingly, a reasonable Examiner would consider Ji in view of Golan important in

deciding whether or not the claim is patentable. **Therefore, Ji in view of Golan raises an SNQ**

**against at least claim 16 of the '822 Patent.**


## V.    CONCLUSION

*Ex Parte* Reexamination is ordered for claims 1-8 and 16-27 of the '822 Patent.

Claims 9-15 and 28-35 are not subject to this reexamination.


**Extensions of Time**

Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings

because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a

reexamination proceeding. Additionally, 35 U.S.C. 305 requires that *ex parte* reexamination

proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)). Extensions of time in

*ex parte* reexamination proceedings are provided for in 37 CFR 1.550(c).

Application/Control Number: 90/013,017                              Page 16
Art Unit: 3992

**Amendment in Reexamination Proceedings**

Patent owner is notified that any proposed amendment to the specification and/or claims in this reexamination proceeding must comply with 37 CFR 1.530(d)-(j), must be formally presented pursuant to 37 CFR § 1.52(a) and (b), and must contain any fees required by 37 CFR § 1.20(c). See MPEP § 2250(IV) for examples to assist in the preparation of proper proposed amendments in reexamination proceedings.

**Service of Papers**

Any paper filed with the USPTO, *i.e.*, any submission made, by either the Patent Owner or the Third Party Requester must be served on every other party in the reexamination proceeding, including any other third party requester that is part of the proceeding due to merger of the reexamination proceedings. As proof of service, the party submitting the paper to the Office must attach a Certificate of Service to the paper, which sets forth the name and address of the party served and the method of service. Papers filed without the required Certificate of Service may be denied consideration. 37 CFR 1.550; MPEP 2266.03.

**Notification of Concurrent Proceedings**

The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving Patent No. 7,058,822 throughout the course of this reexamination proceeding. The third party requester is also reminded of the ability to similarly apprise the Office of any such activity or

Application/Control Number: 90/013,017                                    Page 17
Art Unit: 3992

proceeding throughout the course of this reexamination proceeding.  See MPEP §§ 2207, 2282

and 2286.



     All correspondence relating to this *ex parte* reexamination proceeding should be directed

as follows:

By U.S. Postal Service Mail to:
          Mail Stop *Ex Parte* Reexam
          ATTN: Central Reexamination Unit
          Commissioner for Patents P.O. Box 1450
          Alexandria, VA 22313-1450

By FAX to:     (571) 273-9900
          Central Reexamination Unit

By hand to:    Customer Service Window
          Randolph Building
          401 Dulany St.
          Alexandria, VA 22314

By EFS-Web:
     Registered users of EFS-Web may alternatively submit such correspondence via the

electronic filing system EFS-Web, at

     https://efs.uspto.gov/efile/myportal/efs-registered

     EFS-Web offers the benefit of quick submission to the particular area of the Office that

needs to act on the correspondence. Also, EFS-Web submissions are "soft scanned" (i.e.,

electronically uploaded) directly into the official file for the reexamination proceeding, which

offers parties the opportunity to review the content of their submissions after the "soft scanning"

process is complete.

Application/Control Number: 90/013,017                                   Page 18
Art Unit: 3992

     Any inquiry concerning this communication or as to the status of this proceeding should

be directed to the Central Reexamination Unit at telephone number (571) 272-7705.


     /Jason Proctor/
     Primary Examiner, Art Unit 3992


     Conferees:


     /ADAM BASEHOAR/
     Primary Examiner, Art Unit 3992

     /ALEXANDER KOSOWSKI/
     Supervisory Patent Examiner, Art Unit 3992

Doc code: IDS
Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (01-10)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT (Not for submission under 37 CFR 1.99) | Application Number | |
|---|---|---|
| | Filing Date | 2013-10-07 |
| | First Named Inventor | Yigal Mordechai Edery |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket  Number | 382984-000006 |

| U.S.PATENTS | | | | | | |
|---|---|---|---|---|---|---|
| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
| /J.P./ | 1 | 5983348 | | 1999-11-09 | Ji | |
| /J.P./ | 2 | 6058482 | | 2000-05-02 | Liu | |
| /J.P./ | 3 | 5974549 | | 1999-10-26 | Golan | |

If you wish to add additional U.S. Patent citation information please click the Add button.

| U.S.PATENT APPLICATION PUBLICATIONS | | | | | | |
|---|---|---|---|---|---|---|
| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
| | 1 | | | | | |

If you wish to add additional U.S. Published Application citation information please click the Add button.

| FOREIGN PATENT DOCUMENTS | | | | | | | |
|---|---|---|---|---|---|---|---|
| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2] i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
| | 1 | | | | | | |

EFS Web 2.1.17

| | |
|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** (Not for submission under 37 CFR 1.99) | Application Number | |
| | Filing Date | 2013-10-07 |
| | First Named Inventor | Yigal Mordechai Edery |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | 382984-000006 |

| If you wish to add additional Foreign Patent Document citation information please click the Add button |
|---|

| **NON-PATENT LITERATURE DOCUMENTS** |
|---|

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T⁵ |
|---|---|---|---|
| | 1 | | ☐ |

| If you wish to add additional non-patent literature document citation information please click the Add button |
|---|

| **EXAMINER SIGNATURE** | | | |
|---|---|---|---|
| Examiner Signature | /Jason Proctor/ | Date Considered | 11/18/2013 |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through a citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

[1]See Kind Codes of USPTO Patent Documents at www.USPTO.GOVor MPEP 901.04. [2]Enter office that issued the document, by the two-letter code (WIPO Standard ST.3). [3]For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [4]Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [5]Applicant is to place a check mark here if English language translation is attached.

| | Application Number | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** (Not for submission under 37 CFR 1.99) | Filing Date | 2013-10-07 |
| | First Named Inventor | Yigal Mordechai Edery |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | 382984-000006 |

## CERTIFICATION STATEMENT

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

[ ] That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

[ ] That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

[ ] See attached certification statement.

[ ] The fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

[x] A certification statement is not submitted herewith.

### SIGNATURE

A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | /Ryan W. Cobb/ | Date (YYYY-MM-DD) | 2013-10-07 |
|---|---|---|---|
| Name/Print | Ryan W. Cobb | Registration Number | 64,598 |

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**



UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/013,017 | 10/07/2013 | 7058822 | 382984-000006 | 6388 |

115222     7590     12/06/2013
Bey & Cotropia PLLC (Finjan Inc.)
213 Bayly Court
Richmond, VA 23229

| EXAMINER |
|---|
| PROCTOR, JASON SCOTT |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 12/06/2013 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.